**Don VENABLE and Richard Finlan, Plaintiffs,**

v.

**William KEEVER, et al., Defendants.**

**No. CIV. A.3:96–CV–580L.**

United States District Court, N.D. Texas, Dallas Division.

Aug. 24, 1999.

Don Venable, Dallas, TX, pro se.

Richard Finlan, Dallas, TX, pro se.

John Martin, Amy Hunt, James Coleman, Jr., Carrington Coleman Sloman & Blumenthal, Dallas, TX, for Keever, Defendant.

Austin England, Friedman, Driegert & Hsueh, L.L.C., Dallas, TX, for Friedman and Reese, Defendants.

Anthony Avey, Shannon Gracey Ratliff & Miller, L.L.P., Fort Worth, TX, for Eichelbaum.

Alan Rich, Baron & Budd, Dallas, TX, for Rich, Defendant.

### MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Before the court is Defendants' Motion for Summary Judgment on Qualified Immunity From Suit, filed May 30, 1997. Also before the court are the following pleadings:

1) Plaintiff Venable's Response to Defendants' Motion for Summary Judg-

ment on Qualified Immunity, filed June 16, 1997;

2) Defendant Eichelbaum's Reply Brief, filed June 26, 1997;

3) Defendants' Friedman's, Rich's and Reese's Reply to Venable's Response to Motion for Summary Judgment on Qualified Immunity, filed July 1, 1997;

4) Defendant Keever's Reply to Plaintiffs' Responses to Motion for Summary Judgment on Qualified Immunity, filed July 1, 1997;

5) Plaintiff Finlan's Response to Defendants' Motion for Summary Judgment—Immunity, filed July 2, 1997;

6) Defendants' Friedman's, Rich's and Reese's Reply to Finlan's Response, filed July 14, 1997;

7) Plaintiff Finlan's Supplemental Response to Defendants' Motion for Summary Judgment—Immunity, and Motion to Deny application of Keever for the Absolute Immunity Defense, filed March, 31, 1998;

8) Defendant Keever's Brief on the Relevance of *Bogan v. Scott–Harris*, filed April 29, 1998;

9) Plaintiff Venable's Responsive Brief to Defendant Keever's Brief on the Relevance of *Bogan v. Scott–Harris*, filed May 8, 1998;

10) Plaintiff Finlan's Response to Eichelbaum's Claim to Qualified Immunity, filed October 30, 1998;

11) Defendant Eichelbaum's Reply to Finlan's Response to Eichelbaum's Claim to the Qualified Immunity Defense, filed November 9, 1998;

12) Defendant Eichelbaum's Supplemental Authorities and Brief Relating to His Motion for Summary Judgment on the Issue of Qualified Immunity, filed December 4, 1998;

13) Plaintiff Venable's supplemental response, filed February 25, 1999;

14) Plaintiff Finlan's Supplement to his Response to Defendants' Motion for Summary Judgment—Immunity, filed February 25, 1999;

15) Plaintiff Venable's Supplemental Response to Defendant Eichelbaum's Supplemental Authorities and Brief Relating to his Motion for Summary Judgment on the issue of Qualified Immunity, filed February 25, 1999; and

16) Plaintiff Venable's Supplement to his Supplemental Brief in Response to Defendant Eichelbaum's Supplemental Authorities and Brief Relating to his Motion for Summary Judgment, filed February 25, 1999.

On June 28, 1999, the court held a hearing on Defendants' Motion for Summary Judgment. After careful consideration of the motion, the parties' myriad responses and replies thereto, supplemental responses and replies, and the applicable law, the court **grants** the motion for summary judgment of Defendant Keever and **denies** the motion for summary judgment of Defendants Eichelbaum, Friedman, Rich and Reese.[1]

## I. *Factual and Procedural Background*

This case initially began in 1994 when Don Venable and Richard Finlan (hereinafter referred to as "Plaintiffs" or "Venable and Finlan") sued Defendant Keever, who was the president of the Board of Trustees ("Board") of the Dallas Independent School District ("DISD"), to acquire Keever's campaign finance records. The

---

1. Plaintiff Finlan's July 2, 1997 response to Defendants' summary judgment motion includes an assertion that the motion should be dismissed because Defendants' claim of immunity does not establish that Defendant Keever's acts were performed within the bounds of his official authority. Though Finlan refers to this portion of his response as a motion to strike, the court determines that such is a response to the merits of Defendants' summary judgment claims. Therefore, the court finds no basis for striking Defendants' motion, and Finlan's motion to strike is accordingly **denied.**

other four defendants in this case, Dennis J. Eichelbaum, Lawrence J. Friedman, Alan Rich and David Reese, are attorneys who have represented DISD and Keever in this case and other cases. At the time Plaintiffs filed the action in 1994, they had been involved in extensive litigation against DISD involving numerous lawsuits over a period of years.

Plaintiffs' Joint Original Petition, filed in state court in October of 1994, alleged that Keever refused to allow Plaintiffs to inspect and copy his candidate/officeholder public records which they had requested. The petition specifically alleged causes of action for writs of mandamus and writs of permanent injunction pursuant to Tex. Const., art. I, § 8 and 42 U.S.C. § 1983, and for a writ of mandamus pursuant to Tex. Govt.Code, § 552.321. Plaintiffs asserted that "[a]s a ministerial duty of that office [elected member of the DISD Board], [Keever] is to collect, assemble and maintain certain public records containing public information" pursuant to the Texas Education Code. Thereafter, this case was removed to United States District Court because of the 42 U.S.C. § 1983 claims; however, Plaintiffs subsequently dropped their federal cause of action, and the case was remanded to state court.

In July of 1995, Keever filed a declaratory judgment counterclaim against Plaintiffs, seeking a construction of the Texas Open Records Act and an award of attorneys' fees. Specifically, Keever sought a determination that, as an individual member of the DISD Board, he was not a "governmental body" and had no duty to respond to an open records request. That declaratory judgment counterclaim was subsequently dismissed by the court with respect to Venable in October of 1995. In dismissing the counterclaim, the court held that "as a matter of well established law, the maintenance of a counterclaim by a defendant seeking a declaratory judgment on a subject matter already before a court is improper." Finlan was non-suited in January of 1996. Plaintiffs then filed separate counterclaims. Venable sued Keever and the four attorneys; Finlan sued the same individuals, with the exception of Reese. In February of 1996, the state court severed Plaintiffs' counterclaims, and Defendants immediately removed those severed counterclaims to United States District Court.

Venable's "Original Counterclaim" contends that Defendants abridged his First Amendment right to free and unfettered access to the legal system by retaliatory or abusively frivolous litigation which is actionable under 42 U.S.C. § 1983. He asserts that Defendants' "filing and purposeful continuation of the groundless counterclaim" is not an action protected by the First Amendment or Article I of the Texas Constitution because there is no right to prosecute a claim that is not cognizable in law.

Finlan's "Compulsory Counterclaim" contends that Defendants Keever, Friedman, Rich and Eichelbaum entered into a conspiracy to "drive [him] from the courthouse" by filing the declaratory judgment suit, using the potential award of attorneys' fees, to punish him for inquiring about Keever's campaign finances, and to put an end to his persistent requests for public information from and filing lawsuits against DISD and its board members. He claims retaliation for the exercise of his rights protected by the First Amendment and sues for violation of his civil rights pursuant to 42 U.S.C. § 1983.

Plaintiffs cite a June 22, 1995 DISD resolution ("Resolution"), which authorized the taking of legal action against Plaintiffs, as the basis for the allegedly retaliatory action. The Resolution stated:

In the opinion of the Board of Education, the litiation [sic] between Don Venable, Richard Finlan, Ed Grant, and the Dallas Independent School district, its employees, officials, and agents, which has over the last five (5) years involved multiple lawsuits, should no longer be permitted to expend such sig-

nificant amounts of General Counsel's time from more pressing legal matters in representing the District. It is the opinion of the Board that Larry Friedman and Associates should be designated lead counsel in all such litigation. The Board of Education believes that it is appropriate to instruct its General Counsel, Dennis J. Eichelbaum, along with such other attorneys as its General Counsel may designate, to file such pleadings and law-suits [sic] as necessary to resolve all matters between Don Venable, Richard Finlan, Ed Grant, and the Dallas Independent School District, its employees, officials, and agents.

After consultation with the Board President and General Superintendent, through and with the consent of the District's General Counsel, designated counsel shall file these motions at a time believed to be appropriate.

Venable suggests that the Resolution at best authorized the filing of lawsuits in the name of DISD and did not authorize Keever's filing of the counterclaim in his own name. Finlan suggests that the Resolution evidences the DISD Board's official policy of retaliatory conduct against Plaintiffs by use of "legal hit men."

Defendants assert that they are each entitled to qualified immunity from suit because in filing the counterclaim Keever was performing a discretionary act, did not violate any clearly established constitutional right of which a reasonable person would have been aware, and the attorney defendants were acting on behalf of DISD and performing governmental functions. Plaintiffs contend that neither Keever nor the attorney defendants are entitled to qualified immunity because Keever either did not have authority to file the counterclaim or was acting outside the scope of his authority, and the attorney defendants as private parties are not entitled to qualified immunity.

**In light of the allegations made in Plaintiffs' complaint, the issue presented to the court is whether the filing of an allegedly retaliatory counterclaim seeking a declaratory judgment in state court on a matter already pending before that court is a violation of the First Amendment right of access to the courts.** Accordingly, the resolution of this issue will be dispositive of Defendants' summary judgment motion.

## II. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Company,* 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas,* 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise man-

ner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the movant's motion. *Id.; Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16, n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

### III. *Analysis of Defendant Keever's Motion for Summary Judgment*

The court treats Defendant Keever differently from the attorney defendants, as he was a governmental official at the time the events giving rise to this lawsuit occurred. The court concludes that Keever is entitled to qualified immunity. The attorney defendants were private actors and, for the reasons that follow, are not entitled to qualified immunity.

#### A. Qualified Immunity Standard

■ Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ A defendant official must affirmatively plead the defense of qualified im-

munity. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). All Defendants have pleaded this defense. In deciding a motion for summary judgment that raises the defense of qualified immunity, the court must *first* decide "whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert*, —— U.S. ——, ——, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999), citing *Siegert v. Gilley*, 500 U.S. 226, 232–33, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *see also Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir.1999). The second prong of the test requires the court to make two separate inquiries: whether the right allegedly violated was clearly established at the time of the event giving rise to the plaintiff's claim, and if so, whether the conduct of the defendant was objectively unreasonable. *Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir.1998). Although many cases continue to state that the determination of the qualified immunity issue requires the application of a bifurcated test, the analytical framework for resolving issues of qualified immunity necessarily requires, or may require, a *three-step* analysis. *See Kerr v. Lyford*, 171 F.3d at 339; *Evans v. Ball*, 168 F.3d at 860; *Hare v. City of Corinth, Miss.*, 135 F.3d at 326; *Eugene v. Alief Independent School District*, 65 F.3d 1299, 1305 (5th Cir.1995).

■ Questions whether a defendant acted within the scope of his authority performing a discretionary function and whether a reasonable official in his position would have deemed his conduct unconstitutional are not to be considered by the court unless each part of the three-step inquiry has been answered affirmatively on behalf of the plaintiff. *Kerr v. Lyford*, 171 F.3d at 339. In other words, only after a plaintiff demonstrates the existence and violation of a clearly established constitutional or statutory right is the defendant

required to show that he was performing a discretionary function and that a reasonable official would not have considered his actions to be unconstitutional at the time of the incident in question. *Id.* at 338.

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Foster v. City of Lake Jackson,* 28 F.3d 425, 429 (5th Cir.1994). Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law. *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. 3034; *Stefanoff v. Hays County, Tex.,* 154 F.3d 523, 525 (5th Cir.1998); and *Pierce v. Smith,* 117 F.3d 866, 871 (5th Cir.1997).

In *Anderson v. Creighton,* 483 U.S. 635 at 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether an action is legal], immunity should be recognized." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir.1995), citing *Babb v. Dorman,* 33 F.3d 472, 477

(5th Cir.1994). Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Foster v. City of Lake Jackson,* 28 F.3d at 429. To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. 3034; however, for an official to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce v. Smith,* 117 F.3d at 882; *Stefanoff v. Hays County, Tex.,* 154 F.3d at 525.

### B. Alleged Violation of a Constitutional Right

The court must first decide whether Plaintiffs have alleged the violation of a constitutional right.[2] The Supreme Court has found in the First Amendment a constitutional basis for the right of access to the courts, as the right of access to the courts is an aspect of the right of petition. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). The Fifth Circuit has recognized the First Amendment right of access to the courts and stated that it is well established that access to the courts is protected by the First Amendment right to petition for redress of grievances. *Wilson v. Thompson,* 593 F.2d 1375, 1387 (5th Cir.1979); *Ryland v.*

---

**2.** Plaintiffs contend that Defendants must first show that they were acting within the scope of their authority performing a discretionary function to be entitled to qualified immunity. While this approach has appeal, the court is precluded from taking this approach because the Fifth Circuit has made it abundantly clear that the district court must first determine whether the plaintiff has even alleged a constitutional violation of a clearly established right before addressing the issue of whether the defendants were performing a discretionary function or an act within the scope of their official duties. *Kerr v. Lyford,* 171 F.3d at 339. As stated previously, all questions of the three-part inquiry must be answered in Plaintiffs' favor before the court addresses the issue of whether the official was performing a discretionary function or act.

*Shapiro,* 708 F.2d 967, 971–72 (5th Cir. 1983). The constitutional right of access to the courts is a facilitative right "designed to ensure that a citizen has the opportunity to exercise his or her legal rights to present a cognizable claim to the appropriate court and, if that claim is meritorious, to have the court make a determination to that effect and order the appropriate relief." *Foster v. City of Lake Jackson,* 28 F.3d at 430, quoting *Crowder v. Sinyard,* 884 F.2d 804, 814 (5th Cir. 1989), *cert. denied,* 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990).

 Specifically, the court must decide whether Plaintiffs' allegations regarding the filing of Keever's declaratory judgment counterclaim assert a violation of their constitutional right of access to the courts. The right of access to the courts is implicated "where the ability to file suit was delayed, or blocked altogether." *Foster v. City of Lake Jackson,* 28 F.3d at 430. Plaintiffs have generically alleged a violation of the constitutional right of access to the courts; however, they have not alleged that their ability to file suit was in any way delayed or blocked altogether. Since Plaintiffs have failed to allege, much less establish, that their ability to file suit was delayed, or blocked altogether, they have not alleged the violation of an actual constitutional right at all. Indeed, the summary judgment record establishes that Plaintiffs' access to the courts has suffered no impairment by Defendants' filing of the counterclaim seeking a declaratory judgment in state court. Plaintiffs have in fact accessed the courts by this specific lawsuit. For the reasons stated, Plaintiff's allegations do not state the violation of a constitutional right, and Keever is entitled to judgment as a matter of law.

### C. Clearly Established Right

 The court has determined that the allegations as stated by Plaintiffs do not allege the violation of an actual constitutional right at all, and the court need not address the second part of the qualified immunity standard. Assuming, however, that Plaintiffs have arguably set forth specific facts that allege the violation of a constitutional right, the court concludes, as a matter of law, that the right was not clearly established in July of 1995, the time the conduct took place giving rise to this lawsuit (the filing of the state court counterclaim against Plaintiffs by Defendant Keever seeking a construction of the Texas Open Records Act and an award of attorneys' fees). The parties cite *Harrison v. Springdale Water & Sewer Commission,* 780 F.2d 1422 (8th Cir.1986), for the proposition that the filing of an improper or retaliatory counterclaim pursuant to state law would constitute a denial of a plaintiff's access to the courts in violation of the First Amendment. *Harrison* held that a plaintiff had sufficiently stated a § 1983 cause of action for infringement of the constitutional right of access to the courts by the defendants' filing of a retaliatory counterclaim against the plaintiff in a separate state lawsuit. *Harrison,* 780 F.2d at 1426–28. *Harrison* is from the Eighth Circuit, and is not the law of this circuit. The Fifth Circuit had an opportunity to adopt the holding of *Harrison* but expressly declined to approve or disapprove it. *See Crowder v. Sinyard,* 884 F.2d at 812–13 n. 9. Accordingly, since *Harrison* is not the law of this circuit, the court declines to follow it. In the Fifth Circuit, the right of access to the courts is implicated "where the ability to file suit was delayed, or blocked altogether." *Foster v. City of Lake Jackson,* 28 F.3d at 430. That Keever and the attorney defendants may have authorized the filing of the counterclaim contrary to well established state law does not in any way block or delay Plaintiffs' access to the courts and implicates no First Amendment violation. The remedy or sanction to be imposed for an improper or frivolous claim or pleading is a matter to be addressed and decided by the state court based on applicable state law. As the Fifth Circuit has expressly declined to hold that the filing of an improper or retaliatory state counterclaim is a denial of

a plaintiff's right of access to the courts in violation of the First Amendment, as a matter of law, there was no clearly established constitutional right of Plaintiffs to be free from the filing of such a counterclaim in July of 1995. Accordingly, Defendant Keever is entitled to summary judgment.

### D. Objective Unreasonableness

Plaintiffs contend that Defendants' conduct in filing the counterclaim seeking a declaratory judgment in the state court action was objectively unreasonable, which would preclude Defendants from claiming qualified immunity. The court, having ruled on the other two parts of the three-step inquiry to resolve the qualified immunity issue, will not address objective unreasonableness of Keever's conduct, as it is unnecessary in deciding the issues before the court. *See Evans v. Ball,* 168 F.3d at 863.

### IV. *Analysis of Motion for Summary Judgment Regarding the Attorney Defendants*

The attorney defendants contend that they are entitled to qualified immunity "because they acted as government agents and performed governmental functions." Plaintiffs assert that the attorney defendants are not entitled to qualified immunity because they are private, non-governmental parties, or, alternatively, because they were acting on behalf of Keever personally and in the interest of a single member of the Board rather than on the legitimate interests of DISD as a whole.

The qualified immunity doctrine's purpose is to protect government's ability to perform its traditional functions by providing immunity where necessary to preserve the ability of government officials to serve the public good and to ensure that talented candidates are not deterred from entering public service by the threat of damages suits. *Wyatt v. Cole,* 504 U.S. 158, 167, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992). Stated another way, the purpose of providing qualified immunity to governmental officials is to prevent the "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow v. Fitzgerald,* 457 U.S. at 816, 102 S.Ct. 2727. Private individuals do not generally have qualified immunity from suit. *Wyatt v. Cole,* 504 U.S. at 166–67, 112 S.Ct. 1827.

In *Cullinan v. Abramson,* 128 F.3d 301, 310 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1560, 140 L.Ed.2d 792 (1998), the Sixth Circuit held that the City of Louisville, Kentucky's outside counsel were entitled to qualified immunity against § 1983 claims. The court stated, "We see no good reason to hold the city's in-house counsel eligible for qualified immunity and not the city's outside counsel." *Id.* The court in *Cullinan,* however, offers no in-depth, reasoned analysis for its decision. *Cullinan* is from the Sixth Circuit. The Fifth Circuit has not adopted this holding or approach, and since it is not the law of this circuit, the court declines to follow it. Additionally, *Cullinan* compared the city's outside counsel to its in-house counsel, while all of the attorney defendants in this case were outside counsel contractors for DISD. Moreover, the court believes that an extension of qualified immunity to the defendant attorneys is inconsistent with the stated goals and objectives of qualified immunity.

The Supreme Court refused to extend the qualified immunity defense to a private prison guard because history did not reveal a firmly rooted tradition of immunity applicable to privately employed prison guards, and the purpose of the immunity doctrine did not warrant providing private prison guards with governmental immunity. *Richardson v. McKnight,* 521 U.S. 399, 404–12, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997). The Supreme Court acknowledged that historically the common law did apparently provide a kind of immunity for certain private defendants, such as doctors or lawyers who performed services at the

behest of the sovereign, although it found no indication of any more general immunity for private individuals working for profit. *Id.* at 407, 117 S.Ct. 2100. In this case, the attorney defendants were employed as independent contractors to work for DISD, its employees and officials.

■ Upon consideration of the policies underlying qualified immunity—although the attorney defendants were employed to work on behalf of DISD and its employees and officials—the court is not prepared to extend the protection of qualified immunity to the attorney defendants. Although private defendants may be entitled to qualified immunity when they act pursuant to a government contract or court order, such is not the case here. *See Warner v. Grand County*, 57 F.3d 962, 965–67 (10th Cir.1995)(holding that the director of a crisis center, a private individual, who upon request assisted a police officer in conducting a strip search of prisoners was entitled to qualified immunity). Nothing in the record establishes that the attorney defendants were fulfilling any unique governmental function or undertaking actions that otherwise would be performed by government employees. Qualified immunity "acts to safeguard government, and thereby to protect the public at large, not to benefit its agents." *Wyatt v. Cole*, 504 U.S. at 167–68, 112 S.Ct. 1827. The attorney defendants are not public officials whose job involves the exercise of a discretionary function. Moreover, no public interest is unduly impaired if the attorney defendants are required to proceed to trial or further litigate to resolve their legal dispute with Plaintiffs. If the attorney defendants are granted qualified immunity, it would apply and be available to virtually every independent contractor or agent who works on behalf of the government, and that is not the purpose of qualified immunity. An extension of qualified immunity to the attorneys, on the facts of this case, would be wholly inconsistent with previously stated goals and policies underlying qualified immunity.

Accordingly, Defendants' Motion for Summary Judgment on Qualified Immunity From Suit, with respect to Defendants Eichelbaum, Friedman, Rich and Reese, will be denied. Nothing in this ruling, however, suggests that summary judgment would not be appropriate for the attorney defendants on the merits. In ruling on Defendant Keever's motion for summary judgment, the court held that no constitutional violation occurred, and, even if one occurred, the right was not clearly established in July of 1995. If Keever cannot be liable to Plaintiffs for his actions, it necessarily follows that his attorneys cannot be liable under 42 U.S.C. § 1983 for the same conduct or actions; however, no motion for summary judgment has been filed on the merits.

## V. Conspiracy Allegation

■ Plaintiffs, through various pleadings, loosely make references to a conspiracy by Defendants to drive them from the courthouse by filing the counterclaim. Liability may be imposed under § 1983 based upon a conspiracy; however, a conspiracy claim is not actionable unless there is an actual violation of § 1983. *Kerr v. Lyford*, 171 F.3d at 340–41; *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir.1995). A conspiracy by itself is not actionable under § 1983. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir.1990). The court has ruled that Plaintiffs have not alleged the violation of an actual constitutional right or established that the constitutional right was clearly established in July of 1995. No constitutional violation occurred. Since there is no constitutional violation, there is no derivative conspiracy claim.

## VI. Conclusion

With respect to Keever, there is no material issue of fact regarding to Plaintiffs' claims. Accordingly, Keever is entitled to judgment as a matter of law. Defendants' Motion for Summary Judgment on Qualified Immunity From Suit, with respect to Keever, is **granted.** Plaintiffs' claims

against Keever are dismissed with prejudice.

For the reasons stated previously, Defendants' Motion for Summary Judgment on Qualified Immunity From Suit, with respect to Defendants Eichelbaum, Friedman, Rich and Reese, is **denied**. As stated previously, nothing in this order suggests that the attorney defendants would not be entitled to summary judgment on the merits. If the attorney defendants desire to file a motion for summary judgment, they must do so by September 8, 1999.