Nicolas **HERNANDEZ** and Juana **Olalde, Individually and on behalf of the Estate of Eric Hernandez, Deceased Minor, Plaintiffs,**

v.

**Jim HINES, et al., Defendants.**

**No. CIV. A. 399CV1654–P.**

United States District Court, N.D. Texas, Dallas Division.

March 29, 2001.

Chris Cessac, Attorney at Law, Hurst, TX, Jay K. Gray, Attorney at Law, Bedford, TX, for plaintiffs.

Craig Carter, Attorney at Law, Attorney General of Texas, Austin, TX, Joseph Allen Barbknecht, Attorney at Law, James Brantley Saunders, Attorney at Law, Barbknecht & Associates, Dallas, TX, for defendants.

## MEMORANDUM OPINION & ORDER

SOLIS, District Judge.

Now before the Court for consideration are Jerome Claud and Sue Claud's Motion

to Dismiss filed May 17, 2000, Plaintiffs' Response filed June 5, 2000, and the Claud Defendants' Reply filed June 22, 2000. After reviewing the motions along with the Complaint and the relevant case law, the Court hereby DENIES the Clauds' Motion to Dismiss.

## I. BACKGROUND

The Plaintiffs filed their original complaint on October 7, 1999, and an amended complaint on November 17, 1999, asserting claims under 42 U.S.C. § 1983 to redress deprivations of constitutionally protected rights and interests under color of state law. The circumstances surrounding the Plaintiffs claims are short but tragic. On January 1, 1999, Eric Hernandez was born to his parents, Juana Olalde and Nicolas Hernandez. On February 27, 1999, Eric's parents took him to the Children's Medical Center of Dallas where Eric received treatment for a broken leg. That same day, Texas Department of Protective and Regulatory Services ("TDPRS"), a Texas governmental unit, removed Eric from his parents against their wishes, without their consent, and without a court order. Within a few days, TDPRS placed Eric with Jerome and Sue Claud ("the Clauds") who acted as his foster parents. On March 5, 1999, medical personnel placed two-month-old Eric in a waist and leg cast that restricted the infant's mobility. On March 7, 1999, the Clauds left Eric lying face-down on a pillow. When they checked on him several hours later, they found Eric dead from suffocating on his pillow.

## II. DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint when Defendant shows that Plaintiff has failed to state a claim for which relief can be granted. A motion to dismiss for failure to state a claim is viewed with disfavor and should rarely be granted. *See Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982). Under the rule of *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), a claim should not be dismissed unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. The Court must render its decision taking the complaint in the light most favorable to the plaintiff and taking its allegations as true. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996). There is an important limitation recognized by the Fifth Circuit on this liberal interpretation that favors the Plaintiff: although all facts must be taken as true, the Court does not merely accept all conclusory allegations of the complaint. *See Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982). The Court limits its inquiry to whether plaintiff is entitled to offer evidence to support claims and does not address whether plaintiff will ultimately prevail on the merits. *Johnson v. Dallas Ind. School Dist.,* 38 F.3d 198, 199 (5th Cir. 1994). However, dismissal is proper when "even the most sympathetic reading of [the] pleadings uncovers no theory and no facts that would subject the present defendants to liability." *Jacquez v. Procunier,* 801 F.2d 789, 791–92 (5th Cir.1986).

### A. Qualified Immunity for § 1983 claims

The Defendants may be held liable under § 1983 if they exhibited deliberate indifference to a known risk or a specific duty and their failure to perform the duty or ameliorate the risk was a proximate cause of Plaintiff's deprivation of rights. *Doe v. New York City Dept. of Social Serv.,* 649 F.2d 134, 145 (2nd Cir. 1981). Defendants assert qualified immu-

nity from claims under § 1983. Government officials who perform discretionary tasks are entitled to qualified immunity unless their action violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Defendants thus claim that the burden falls on Plaintiffs to disprove qualified immunity.

However, Defendants cannot hide under the cloak of qualified immunity until they demonstrate that foster parents are state officials for the purposes of qualified immunity. Neither party cites case law squarely for or against this proposition. Plaintiff cites several cases where qualified immunity was refused to private citizens. *Richardson v. McKnight* held that prison guards who were employees of a private prison management firm which had a contract with the state were not entitled to qualified immunity from prisoner lawsuits under § 1983. 521 U.S. 399, 412, 117 S.Ct. 2100 (1997). The Court first found that history did not reveal a " 'firmly rooted' tradition of immunity" applicable to privately employed prison guards. *Id.* at 404, 117 S.Ct. 2100. The Court next found no warrant for such immunity from the immunity doctrine's purposes, including "protecting 'government's ability to perform its traditional functions' by providing immunity where 'necessary to preserve' the ability of government officials 'to serve the public good or to ensure that talented candidates were not deterred by the threat of damages suits from entering public service.' " *Id.* at 408, 117 S.Ct. 2100. The Court stressed the narrowness of its opinion, applicable only to the facts of the case, including the fact that the firm was private, for-profit, competing with other firms, and

was given limited direct supervision by the government. *Id.* at 412, 117 S.Ct. 2100.[1] *McKnight* built on *Wyatt v. Cole,* 504 U.S. 158, 159, 168–69, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992), which held that private defendants are not entitled to qualified immunity under § 1983 for actions invoking state replevin, garnishment, and attachment statutes later declared unconstitutional; *Wyatt* similarly narrowed its holding to the facts of the case. The *Wyatt* court concluded that extending qualified immunity to such defendants would not change

> whether public officials could act forcefully and decisively in their jobs or on whether qualified applicants entered public service. Moreover, unlike with government officials performing discretionary functions, the public interest will not be unduly impaired if private individuals are required to proceed to trial to resolve their legal disputes. In short, the nexus between private parties and the historic purposes of qualified immunity is simply too attenuated to justify such an extension of our doctrine of immunity.

504 U.S. at 167, 112 S.Ct. 1827. *See also Venable v. Keever,* 61 F.Supp.2d 552, 561 (N.D.Tex.1999) (denying qualified immunity to private attorneys working as outside counsel contractors for the Dallas Independent School District and finding "private individuals do not generally have qualified immunity from suit").

Defendants counter with law from outside the Fifth Circuit. The *Warner v. Grand County* court held that a private individual who performs a unique government function at the request of a state official who enjoys qualified immunity also enjoys qualified immunity. 57 F.3d 962, 965 (10th Cir.1995) (granting qualified im-

---

1. The opinion also permitted a possible good faith defense, which Defendants do not argue and which would not seem to apply to the facts of this case. *Id.* at 413.

munity for a private individual who conducted a strip search). The court in *Sherman v. Four County Counseling Center* held that a private psychiatric facility could claim qualified immunity for administering anti-psychotic medication to a patient who was involuntarily detained, as this would serve the public interest and not discourage private facilities from accepting such patients. 987 F.2d 397, 405–06 (7th Cir.1993). The court in *Rodrigues v. Furtado* permitted qualified immunity for a doctor who performed a vaginal search of a suspect pursuant to a search warrant. 950 F.2d 805, 814–15 (1st Cir. 1991).

The Court is aware of no firmly rooted history of immunity for foster parents. The Clauds do not allege that they are state workers; indeed, they are private defendants. The Supreme Court considered English common law and stated, "Apparently the law did provide a kind of immunity for certain private defendants, such as doctors or lawyers who performed services at the behest of the sovereign.... But we have found no indication of any more general immunity that might have applied to private individuals working for profit." *McKnight,* 521 U.S. at 407, 117 S.Ct. 2100. Lacking direct historical precedent, this Court considers whether declining to extend protection from suit to the Clauds would violate the purposes of qualified immunity. Foster parents such as the Clauds perform what is arguably a governmental function of caring for abused children or those without parents; these children might otherwise be placed in state orphanages, as Defendants argue. However, it also seems plausible that such children might end up in private care facilities; taking care of children cannot be said to be a function unique to government.

Further, the Court can only speculate as to whether permitting lawsuits such as the one before the Court would unduly discourage foster parents from agreeing to take care of foster children, but sees no evidence that it would. The scope of the government supervision of the Clauds is not clear from the evidence before the Court. As in the *Venable* case with private attorneys, foster parents are not public officials whose job involves the exercise of a discretionary function. *See* 61 F.Supp.2d at 562. Certainly it is voluntary whether foster parents accept a child; the state would not press them into service for this purpose, though it may request their services. *Cf. Furtado,* 950 F.2d at 815. Nor did the Clauds act under court order, nor is the Court aware of any statutory duty performed by the Clauds. Further, no public interest is unduly impaired if foster parents must face trial or litigation to resolve a plaintiff's legal claims. *See id.* Though it is a close question, on balance it does not disserve the purposes of qualified immunity to deny its protection for foster parents. Though Defendants' cases might support a finding of qualified immunity, they certainly do not mandate it,[2] as those courts have not squarely addressed the issue at hand or implied that foster parents should enjoy qualified immunity. This Court declines to extend the law of the Fifth Circuit to grant qualified immunity to foster parents. Defendants' Motion to Dismiss the § 1983 claims based on qualified immunity is denied.

---

**2.** The Court notes the somewhat analogous facts of the First Circuit's decision in *Downs v. Sawtelle,* 574 F.2d 1, 14–15 (1st Cir.1978) denying qualified immunity to a spendthrift guardian who acted in concert with state officials to sterilize the plaintiff against her will, but will defer to that court's decision in *Furtado* that questioned whether *Sawtelle* was still good law. 950 F.2d at 814–15 & n. 11.

■■ Even if foster parents such as the Clauds are eligible for qualified immunity, the Clauds are not entitled invoke it as a matter of law in this case without proceeding to the evidence of the case. Public officials are entitled to qualified immunity from suit under § 1983 unless the Plaintiffs demonstrate that they violated clearly established constitutional law. *Schultea v. Wood,* 27 F.3d 1112, 1115 (5th Cir.1994). In assessing a qualified immunity defense, the court undertakes a bifurcated analysis. Initially, the court must determine whether the plaintiff alleges the violation of a clearly established constitutional right. Then, the court must analyze the reasonableness of defendants' conduct because "even if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable." *Rankin v. Klevenhagen,* 5 F.3d 103, 105 (5th Cir.1993).

1. Allegation of a Constitutional Right

■■ The initial step in this analysis requires the Court to determine whether Plaintiff has sufficiently alleged a constitutional violation. *See Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (holding that the plaintiff must assert a constitutional right before the court determines whether the right asserted is 'clearly established'); *Samaad v. City of Dallas,* 940 F.2d 925, 940 (5th Cir.1991) ("In *Siegert,* the Court holds that a court addressing a claim of qualified immunity should first consider 'whether the plaintiff asserted a violation of a constitutional right at all' before reaching the possibly unnecessary question of whether the plaintiff asserted a violation of a 'clearly established' right."). Foster children have a constitutional right to adequate food, shelter, clothing, medical care, and a right to be free from harm while in state managed foster care. The state's responsibility begins once the child is removed to state custody and continues even once the child is placed in a foster setting. *See Youngberg v. Romeo,* 457 U.S. 307, 316, 324, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (considering Fourteenth Amendment rights to safe conditions of confinement for person involuntarily committed to state institution for the mentally retarded). Plaintiffs' claim to freedom from the unsafe condition causing Eric's death invokes a constitutional right.

2. Constitutional Right as Clearly Established

■■ To be clearly established, the constitutional right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right. It is not necessary that there be a case which is factually identical or which holds the specific action at bar unlawful. Rather, the unlawfulness of the action must be apparent in light of the existing law." *Hare v. City of Corinth,* 36 F.3d 412, 415 (5th Cir.1994). Therefore, this Court must determine whether there was a clearly established constitutional duty for the Claud Defendants to protect Eric against his smothering death. In so doing, the Court also resolves any questions raised by the Claud Defendants under Rule 12(b)(6) as to whether Plaintiffs have alleged claims upon which relief can be granted.

Plaintiffs assert claims under the United States Constitution for deprivation of Plaintiffs' rights to life, liberty, bodily integrity, reasonable safety, due process of law, and freedom from cruel and unusual punishments through 42 U.S.C. § 1983. Defendants argue in conclusory fashion that Plaintiffs have failed to state claims upon which relief may be granted. Such argument is insufficient for the Court to dismiss Plaintiffs' claims.

Defendants address one claim with particularity: "the right to have the state assume some responsibility for the safety and general well-being of an individual whom the state has taken into custody and held there against the person's will." Defs.' Mot. at 4 (*citing DeShaney v. Winnebago County Dept. of Social Svcs.*, 489 U.S. 189, 199–200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (*citing Youngberg v. Romeo*, 457 U.S. 307, 317, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982))). *See also Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (Eighth and Fourteenth Amendments require the state to provide adequate medical care to incarcerated prisoners). The Defendants in the *DeShaney* case were social workers and local officials who had received complaints that a boy in the custody of his father had been abused, but failed to rescue the boy from abuse. 489 U.S. at 191, 109 S.Ct. 998. *DeShaney* is consistent with the imposition of liability for foster parents:

> "Had the State by the affirmative exercise of its power removed [the child] from free society and placed him in a foster home operated by its agents, we might have a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect. Indeed, several Courts of Appeals have held, by analogy to *Estelle* and *Youngberg*, that the State may be held liable under the Due Process Clause for failing to protect children in foster homes from mistreatment at the hands of their foster parents."

489 U.S. at 201 n. 9, 109 S.Ct. 998 (citations omitted).

As discussed above, foster children have a clearly established constitutional right to adequate food, shelter, clothing, medical care, and a right to be free from harm while in state managed foster care. *See* *Youngberg v. Romeo*, 457 U.S. 307, 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). *See also K.H., Through Murphy v. Morgan*, 914 F.2d 846, 850–53 (7th Cir.1990) (state can be liable for removing child from one abusive foster home only to place child in another home known for a propensity to neglect or abuse children). The Claud Defendants argue that the claims of Plaintiffs' First Amended Original Complaint and Rule 7 Reply are conclusory and fail to state a constitutional claim. The Clauds also note that *Thompson v. Steele* indicates personal involvement by the defendant is necessary in a § 1983 action. 709 F.2d 381, 382 (5th Cir.1983).

Given the facts as alleged by Plaintiffs, this Court believes a claim for relief has been stated under *Doe v. New York City Dept. of Social Serv.*, 649 F.2d 134, 145 (2nd Cir.1981). The Defendants may be held liable under § 1983 if they exhibited deliberate indifference to a known risk or a specific duty and their failure to perform the duty or ameliorate the risk was a proximate cause of Plaintiff's deprivation of rights. *Id.* Plaintiffs' pleadings indicate that Eric's mobility was restricted due to a waist and leg cast, and that he was placed face-down on a pillow for several hours, causing positional asphyxia.[3] Such behavior could indicate a deliberate indifference to the risk of suffocation for an immobilized infant and the duty assumed by the Clauds to care for him, which proximately caused Eric's death. Plaintiffs thus state a claim for the deprivation of Eric's constitutional right to be free from harm. The claim is sufficiently clear that a reasonable foster parent would realize that creating a grave risk of death to a child in their care would violate that child's right to safety. The constitutional rights alleged to be violated

---

3. Pl's Compl. para. 26, 27.

are "clearly established" for the purposes of evaluating qualified immunity.

 Defendants claim there is no allegation that complaints about the Clauds' home were substantiated, that any child in the Claud home was seriously hurt prior to Eric's placement, that anyone in the Claud home intentionally abused children, that abuse and neglect charges were ever substantiated, or that the Clauds or Eric had problems between the time Eric was placed in the Claud home and his death. The Clauds do not fully explain how any of the allegations they enunciate would affect a § 1983 claim against the Clauds. If the Clauds are faulted for their judgment or abuse in caring for Eric, then how they acted toward other children would not be needed to stave off a motion to dismiss for failure to state a claim upon which relief can be granted. Though the allegations in question are informative as to whether the Clauds were deliberately indifferent to Eric's rights, such pleadings are not required as a matter of law. Regardless of whether claims of abuse or neglect were substantiated, the question is whether such claims are true and such abuse actually occurred. While Defendants are technically correct that many of the allegations against the Clauds are phrased as facts that the State Social Worker Defendants knew or could have known,[4] at least some of those allegations clearly allege abuse or a pattern of neglect by the Clauds. For instance, one allegation is that Sue Claud showed up with a foster child in September of 1998 but disclaimed knowledge of how the child's jaw was bruised and swollen, and claimed she would have been too far away to have heard the child if it was injured.[5] Such a statement would appear to give the Claud Defendants notice of an allegation of abuse. Further, claims of

actual harm to children or intentional abuse would not strictly be needed to prove deliberate indifference. The allegations are sufficiently well-pleaded to withstand a 12(b)(6) motion.

3. Reasonableness of the Official's Actions

 To determine the objective reasonableness of an official's conduct, the court examines whether a reasonable official could have believed their conduct to be lawful in light of clearly established law and the information he possessed. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir.1998). The Court concludes that under the facts pleaded, no reasonable official could find the Claud's to have acted lawfully. The partially immobilized infant Eric was placed face down on a pillow and not checked for several hours. It would seem objectively unreasonable to place an infant who cannot move in a position that would prevent his breathing, and then to leave him alone for several hours. Because the Clauds are alleged to have violated a clearly established constitutional right and their alleged actions are not objectively reasonable, the Clauds are not entitled to dismiss as a matter of law the § 1983 claims, and the Court must deny the motion to dismiss the § 1983 claims based upon qualified immunity.

**B. State Statutory Claims**

 Plaintiffs allege claims under Texas Human Resources Code § 42.001 *et seq.* and § 74.001 *et seq.*, and Title 40 of the Texas Administrative Code § 700.101 *et seq.* These claims fall under paragraphs 56 through 58 of Plaintiff's Complaint, under the title "Claims Against State Social Workers, State Directors, and Regional Directors for Deprivation of Statutory Rights/Entitlements. These claims are

---

4. Pl's Rule 7 Reply para. 18.

5. Pl's Rule 7 Reply para. 18 p. 9.

clearly separated from paragraphs 59 and greater which fall under the heading "Claims Against the Clauds." However, Plaintiff realleges paragraphs 1–58 in paragraph 59 against the Clauds. The titles for the claims against the Clauds are "Federal Civil Rights" and "Negligence." Plaintiffs state in their Response that the state statutory claims in paragraphs 56–58 do not apply to the Clauds. The Court finds that the state law claims of paragraphs 56–58 were never asserted against the Clauds, and thus the Clauds need not answer them.

### C. Negligence

Defendants simply request dismissal of Plaintiffs' common law negligence claim without argument. Absent a reason to dismiss the negligence claim, it stands. Since the Court does not dismiss Plaintiffs' federal claims, the Court denies Defendants' request to dismiss the state law claims for lack of federal jurisdiction.

## III. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is DENIED.