Don VENABLE and Richard
E. Finlan, Plaintiffs,

v.

William KEEVER, Dennis J. Eichelbaum, Lawrence J. Friedman, Alan B. Rich, and David Reese, Defendants.

No. 3:96–CV–0580–X.

United States District Court,
N.D. Texas,
Dallas Division.

March 31, 1997.

As Amended April 28, 1997.

Don Venable, Dallas, TX, pro se.

Richard E. Finlan, Dallas, TX, pro se.

Lawrence J. Friedman, Alan B. Rich, Robert Stephen Driegert, Friedman Driegert & Hsueh, Dallas, TX, for William Keever, Dennis J. Eichelbaum, Lawrence J. Friedman, Alan B. Rich, David Reese.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

█ This case presents a situation unprecedented before this Court in which a defendant's attorney is himself a named defendant in the case. Defendant William Keever is president of the Dallas Independent School District ("DISD") Board of Trustees. Defendant Dennis J. Eichelbaum acts as general counsel for the DISD. Keever and Eichelbaum are represented in this lawsuit by the law firm of Friedman & Associates ("F & A"). Defendants Lawrence J. Friedman, Alan B. Rich, and David Reese are attorneys with F & A, and represent themselves as well as Keever and Eichelbaum. The Defendant's attorney's fees are being paid by the DISD.

On September 16, 1996, the Court held a hearing on the Defendants' motion to strike a tape recording of DISD board meeting. During the hearing, the Court expressed a concern about whether the F & A attorneys could ethically represent themselves and the other defendants simultaneously without a conflict of interest and without violating the local rules of this Court.[1] The Court heard from the F & A attorneys and from Keever (the only non-lawyer defendant) at that time, and requested additional briefing on the conflict issue. After careful consideration of the statements of the parties, the briefing, and the relevant law, the Court concludes that on the current state of the record, there is insufficient evidence to require the disqualification of the F & A attorneys who are defendants from representing Keever and Eichelbaum.

\*　　\*　　\*

---

1. Transcript of the September 16, 1996 hearing [hereinafter Tr.] at 21.

At the September 16, 1996 hearing, the Court expressed its concern about whether the F & A attorneys who are also defendants in this case could represent themselves and the other defendants. The Court noted Local Rule 13.8, which prohibits a lawyer from being employed in a case where he will likely be a fact witness and where his credibility may be an issue.[2] The Court also posed the question of what the F & A attorneys would do if the Plaintiffs wanted to settle with Keever or Eichelbaum and not with the law firm, or vice versa.[3] In essence, the Court was concerned that the F & A attorneys' interests may be adverse to the interests of Keever and Eichelbaum, and thus the taxpayers of the DISD, who are funding this litigation. The Court did not want to learn on appeal after a lengthy and costly lawsuit that reversible error may have been inherent in the case from the beginning.[4]

Testifying under oath, F & A attorney Alan B. Rich assured the Court that all of the Defendants' interests are aligned and that there is no actual conflict. Rich also commented that he believed that, except in unusual circumstances, the local rule prohibiting a lawyer as a witness could be waived by the client.[5] As for a potential conflict in the settlement context, Rich stated that anything that causes a conflict, whether it be settlement or testimony or anything else, would be dealt with appropriately under the rules.[6] Rich believes that the client can waive almost any kind of conflict once there has been full disclosure, and even consultation with independent counsel as necessary,

and those issues can be dealt with if and when they arise.[7] Rich stated that the Plaintiffs have sued every other lawyer that represented the DISD, and pointed out the injury to the DISD by having to retain new counsel on behalf of Keever and Eichelbaum at great expense.[8]

The Court sought Keever's thoughts on the potential conflict issue. Keever responded that he believed if he was forced to retain other counsel, that those lawyers would soon be sued by the Plaintiffs, and that would increase the cost of this litigation and take money away from the schoolchildren of the city.[9] Subsequent affidavits by Keever and Eichelbaum filed for the Court's *in camera* review reiterate that each has been fully advised of the potential conflict of interest which could arise, and each believes there is no current conflict of interest and that the disqualification of current counsel would cause great hardship.

\*          \*          \*

The Court's decision as to whether F & A should be disqualified from representing Keever and Eichelbaum is complicated by the dearth of legal precedent on point. After diligent research, the Court has not located a single reported case in which attorneys simultaneously represented themselves and other parties in the same case. The Court must thus look to cases which are only somewhat analogous.

The Fifth Circuit has recently set forth the applicable legal standards for disqualification of an attorney who may be a witness in

---

**2.** Tr. at 21.

**3.** Tr. at 24.

**4.** Tr. at 25.

**5.** Tr. at 21–22.

**6.** Tr. at 25.

**7.** Tr. at 26.

**8.** Tr. at 27. The Court notes that Plaintiffs claim this lawsuit is one of a series of SLAPP ("Strategic Lawsuits Against Public Participation") actions initiated by the Defendants with the intent of harassing, intimidating, and punishing the Plaintiffs for exercising their First Amendment

rights to bring about political reform. This lawsuit originated in state court. Venable and Finlan filed "counterclaims" under 42 U.S.C. § 1983 on January 29, 1996, and the entire case was removable on that date. When the "counterclaims" were severed by the State Court, the lawyer defendants and Keever caused the severed portion to be removed, causing a "two-front" war. Two cases, one in State Court and one in Federal Court, were thus generated. This action of course causes the time and expense to increase for all concerned. As of September 17, 1996, F & A had billed DISD for $30,160.00 in attorney's fees and $2,931.12 in expenses in this case. It is unknown to the Court how high the F & A meter has run on DISD taxpayers as of this date.

**9.** Tr. at 31.

*FDIC v. United States Fire Ins. Co.*, 50 F.3d 1304 (5th Cir.1995). The district court must consider four separate relevant ethical canons: the Local Rules of the Northern District of Texas ("Local Rules"), the Texas Disciplinary Rules of Professional Conduct ("Texas Rules"), the American Bar Association ("ABA") Model Rules of Professional Conduct ("Model Rules"), and the ABA Model Code of Professional Responsibility ("Model Code"). *Id.* at 1312. As the Fifth Circuit noted, however, these rules "delineate dissimilar, arguably contradictory, rules for dealing with lawyer-witnesses." *Id.* Unfortunately, none of these ethical canons appears to address the aberrant situation presented in this case.

The local rules promulgated by the district court are the most immediate source of guidance for the Court. *FDIC* at 1312. Local Rule 13.8(a) provides in relevant part that an attorney should not accept employment in a case if he knows he ought to be called as a witness on behalf of his client unless "refusal would work a substantial hardship on the client because of the distinctive value of the attorney or his firm as counsel in the particular case." Local Rule 13.8(c) provides that if an attorney learns that he may be called as a witness other than on behalf of his client, the attorney and his firm may continue the representation until it is apparent that his testimony is or may be prejudicial to the client.

The Texas disciplinary rules provide relevant guidelines for the issue of disqualification of an attorney. *Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 421 (Tex.1996). Under Texas Rule 1.06, if an attorney's representation of a client becomes adversely limited by the lawyer's own interests, such a conflict can be waived if the lawyer reasonably believes that the representation of the client will not be materially affected and the client consents after full disclosure of the possible adverse consequences of the representation. Texas Rule 3.08 includes the hardship provision found in the Local Rule discussed above, and also provides that if the client consents after full

disclosure, a lawyer may continue representing the client even if the lawyer is compelled to furnish testimony that will be substantially adverse to the client.

Model Rule 1.7(b), like its Texas Rule counterpart, permits a lawyer to continue to represent a client whose interests may conflict with his own if the lawyer reasonably believes that his representation of the client will not be adversely affected and the client consents after consultation. Model Rule 3.7 makes no distinction between testimony that is on behalf of the client or adverse to the client. It permits a lawyer to serve as both advocate and witness, but only (in the context of this case) if disqualification of the lawyer would work substantial hardship on the client.

The Model Code permits a lawyer to represent a client with whom he may have a conflict of interest if the client consents after full disclosure. DR 5–101(A). Under DR 5–105(C), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents after full disclosure. DR 5–102(A) prohibits a lawyer from representing a client if he ought to be called as a witness on behalf of his client unless refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case. Under DR 5–102(B), a lawyer may represent a client when the lawyer may be called as a witness other than on his client's behalf until it is apparent that his testimony may be prejudicial to the client.

Under these somewhat contradictory standards, disqualification of the F & A attorneys at this time seems improper because both Keever and Eichelbaum testify as to the hardship [10] that retaining new counsel would cause them, and premature because it is not apparent at this time that testimony by the F & A attorneys would be prejudicial to their clients. All of the defendants, the attorneys and the clients, insist that every potential conflict has been fully discussed between

---

**10.** The Court has serious doubts about the existence of an actual hardship but defers to the fully informed wishes of the defendants. Further-

more, if State Bar of Texas Rule 3.08 has been violated as claimed that is a matter for a State Bar of Texas grievance committee to consider.

them, and all consent to continued representation by F & A of Keever and Eichelbaum.

The Court notes that both Plaintiffs oppose the continued representation of Keever and Eichelbaum by F & A. Both intend to call the F & A lawyers as witnesses. However, the Court is bound by the express mandate of the Fifth Circuit that "[w]here an attorney's testimony may prejudice only his own client, the opposing party should have no say in whether or not the attorney participates in the litigation as both advocate and witness." *FDIC* at 1315. It is yet unclear exactly what testimony may be elicited from the F & A lawyers, and whether it will indeed prove prejudicial to their clients.

\*     \*     \*

█  "Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." *FDIC* at 1313. The Court concludes there is insufficient evidence in the record that would require the disqualification of F & A from representing Keever and Eichelbaum at this time, but remains concerned about a potential conflict of interest arising as the case progresses.