Richard E. FINLAN et al., Appellants,

v.

DALLAS INDEPENDENT SCHOOL DISTRICT et al., Appellees.

No. 11–00–00302–CV.

Court of Appeals of Texas, Eastland.

Oct. 24, 2002.

Rehearing Overruled Nov. 27, 2002.

Ed Grant, pro se.

Richard Finlan, pro se.

Ronald D. Hinds, Reyna Hinds & Crandall, Dallas, for appellants.

Gary D. Elliston, DeHay & Blanchard, John Arnold, DeHay & Elliston, James E. Coleman, Jr., John Andrew Martin, Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dallas, Melinda Burke, Joseph W. Spence, Shannon, Gracey, Ratliff & Miller, Fort Worth, Gary Zausmer, Adam Price, Jenkens & Gilchrist, Austin, for appellees.

Panel consists of: ARNOT, C.J., and McCALL, J., and McCLOUD, S.J.*

Opinion

TERRY McCALL, Justice.

The trial court granted summary judgments and rendered a final judgment that Richard E. Finlan (Finlan), David L. Venable, and Don Venable take nothing on their claims against the Dallas Independent School District (DISD), the DISD superintendent and trustees (DISD Defendants),[1] and the DISD attorneys (Lawyer Defendants).[2] The trial court also granted summary judgment and rendered judgment that DISD trustee Ed Grant (Grant) take nothing on his cross-claim for indemnity against the Lawyer Defendants. In this appeal, Finlan, David Venable, and Grant assert that the trial court erred in rendering summary judgment against them. Don Venable appealed but later withdrew his appeal. Because the DISD, the DISD Defendants, and the Lawyer Defendants established that they were entitled to summary judgment on Finlan's and David Venable's claims and because the Lawyer Defendants established that they were entitled to summary judgment

---

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

1. The DISD Defendants are DISD Superintendent Marvin Edwards and DISD Trustees Sandy Kress, Rene Castilla, Trini Garza, Hollis Brashear, Kathlyn Gilliam, and Yvonne Ewell. DISD Trustees Dan Peavy and Ed Grant were also defendants; but, because of conflicts of interest between the DISD, on the one hand, and Peavy and Grant, on the other hand, the DISD did not provide a defense to Peavy or Grant in this cause. Peavy and Grant are not included in the DISD Defendants in this opinion. The trial court severed Finlan's and the Venables' claims against Peavy and Grant before entering its final judgment in this matter.

2. The Lawyer Defendants are Leonard J. Schwartz; Dennis J. Eichelbaum; and their firm, Schwartz & Eichelbaum, P.C.

on Grant's cross-claim for indemnity, we affirm the trial court's judgment.

*Introduction*

In 1992, the DISD, a governmental entity, filed a civil lawsuit for tortious interference and defamation against Finlan, David Venable, and Don Venable. Finlan and the Venable brothers counterclaimed, alleging that the DISD's suit was baseless and malicious and that the DISD filed the suit in retaliation for Finlan and Don Venable's exercise of First Amendment free speech rights to publicly criticize the DISD and oppose an upcoming DISD bond election. The core issue in this case is whether the DISD's filing of the 1992 civil suit deprived Finlan and David Venable of their constitutional rights and, therefore, subjected the DISD to liability under 42 U.S.C.A. § 1983 (West Pamph. Supp.2002) for civil rights violations. This case is not the only case between Finlan and the DISD; Finlan and the DISD have a long history of litigation. Finlan and other parties involved in this case have raised virtually identical Section 1983 civil rights claims—that the DISD's filing of a civil suit or counterclaim against them violated their First Amendment rights—in at least three other cases: (1) *Dallas Independent School District v. Finlan*, 27 S.W.3d 220 (Tex.App.-Dallas 2000, pet'n den'd), *cert. den'd*, 534 U.S. 949, 122 S.Ct. 342, 151 L.Ed.2d 258 (2001); (2) *Hinds v. Dallas Independent School District*, 188 F.Supp.2d 664 (N.D.Tex.2002); and (3) *Venable v. Keever*, 61 F.Supp.2d 552 (N.D.Tex.1999), and subsequent opinion at 2000 WL 1281206 (N.D.Tex.2000). In each of these three cases, the courts held that the DISD's filing of the suit or counterclaim was not a constitutional violation and, therefore, did not give rise to Section 1983 liability. We discuss these cases below. Now, contrary to the holdings in each of these three cases, Finlan and

David Venable again assert in this appeal that the filing of a civil suit against them violated their civil rights.

*Background Facts*

In 1991, Finlan and Don Venable sued the DISD for alleged fraud and misapplication of bond funds. In 1992, Goldman, Sachs & Co., an investment banker, agreed to underwrite the issuance of $60,000,000 in tax and revenue anticipation notes for the DISD. Finlan and Don Venable wrote a letter to Goldman, Sachs & Co. informing it of their pending litigation against the DISD. In the letter, they stated as follows:

> Please be on notice that an Application for Temporary Injunction has been filed in the context of a law suit against the District that alleges fraud, misapplication of bond funds and for falsification of government documents.... As a defense against any claims of fraud that may arise and may present the possibility of irreparable harm to the taxpayers of this District, you are being made aware of the aforementioned "Application for Temporary Injunction" and of the pending litigation. Take due notice and proceed at your own risk.

In response to this letter, the DISD Defendants conferred with DISD attorney, Dennis J. Eichelbaum, and decided to file a lawsuit against Finlan, Don Venable, and David Venable for tortious interference with the DISD's relationship with Goldman, Sachs & Co. The DISD Defendants authorized the Lawyer Defendants to file suit.

On October 5, 1992, the DISD filed suit in the 192nd District Court of Dallas County against Finlan, David Venable, and Don Venable for tortious interference with its relationship with Goldman, Sachs & Co. and for defamation. In its original petition, the DISD sought to recover damages

in excess of $10,000,000. The DISD alleged that, if the letter to Goldman, Sachs & Co. caused an upcoming $270,000,000 bond election to fail, its damages would exceed $270,000,000. Finlan and both Venables filed a counterclaim, asserting that the DISD's filing of the suit constituted a violation of their civil rights under Section 1983.

DISD's suit was transferred from the 192nd District Court of Dallas County to the 14th District Court of Dallas County. In 1993, Finlan filed a plea in bar to the DISD's suit against him. The trial court granted Finlan's plea in bar and dismissed the DISD's suit against Finlan with prejudice. DISD nonsuited its claims against the Venables. The trial court realigned the parties. Finlan and the Venables became the plaintiffs, and the DISD became the defendant. The suit was transferred to the 101st District Court of Dallas County.

In 1994, Finlan, pro se, and the Venables, represented by Ronald Hinds, filed suit against the DISD Defendants and the Lawyer Defendants in the 162nd District Court of Dallas County. They alleged that the DISD's filing of the 1992 tortious interference suit violated their First Amendment constitutional rights and, consequently, subjected the DISD Defendants and the Lawyer Defendants to liability for civil rights violations under Section 1983. They also alleged state law claims of malicious prosecution/abuse of process and intentional infliction of emotional distress.

Because DISD Trustee Grant took the position that the DISD's filing of the 1992 tortious interference suit violated Finlan's and the Venables' civil rights, the DISD elected not to provide Grant with a defense in the 162nd District Court suit. In his answer to the suit, Grant admitted Finlan's and the Venables' factual allegations and agreed that the DISD's filing of the 1992 tortious interference suit violated Finlan's and the Venables' civil rights. Grant, represented by David Venable's lawyer, Ronald Hinds, filed a cross-claim for indemnity against the Lawyer Defendants. Grant based his cross-claim on alleged malpractice committed by the Lawyer Defendants.

Grant entered into an agreed judgment in favor of Finlan for $300,000, and the trial court entered the judgment. Based upon the events surrounding the $300,000 agreed judgment, the DISD filed a conspiracy suit in 1995 against Finlan, Grant, and Hinds, alleging that they conspired to obtain the $300,000 judgment as a means to force the DISD to pay $300,000 to Finlan. See *Dallas Independent School District v. Finlan*, supra. Finlan filed a counterclaim for civil rights violations under Section 1983, alleging that the DISD filed the 1995 conspiracy suit in retaliation for his exercise of free speech rights. Finlan asserted that the DISD's filing of the suit violated his First Amendment rights to free speech and to petition the courts for redress of grievances. The Dallas Court of Appeals disagreed with Finlan and held that the DISD's filing of the suit did not violate Finlan's constitutional rights. *Dallas Independent School District v. Finlan*, supra at 244–45. Hinds filed a Section 1983 civil rights suit against the DISD, the DISD Trustees, and the Lawyer Defendants in federal court alleging that the DISD's filing of the 1995 conspiracy suit violated his First Amendment rights to free speech and to access the courts. See *Hinds v. Dallas Independent School District*, supra. Hinds claimed, similar to David Venable's claims in the case now before this court, that the DISD's filing of the suit against him damaged his reputation and law practice. The federal district court held that Hinds failed to state a claim under Section 1983; the DISD's filing of the suit against Hinds did not vio-

late Hinds' First Amendment rights. *Hinds v. Dallas Independent School District,* supra at 673–76.

In March 1999, Finlan's and the Venables' 162nd District Court suit against the DISD Defendants and the Lawyer Defendants was consolidated with their suit against the DISD in the 101st District Court. The 101st District Court cause is the cause currently before this court. Finlan's Section 1983 civil rights claims in this cause are virtually identical to the civil rights claims that he asserted unsuccessfully in *Dallas Independent School District v. Finlan,* supra. In this cause, Finlan claims that the DISD's filing of the 1992 tortious interference suit was malicious and retaliatory and violated his First Amendment rights of free speech and to petition the courts. In his latest petition, Finlan alleged six Section 1983 claims based upon the filing of the 1992 tortious interference suit: (1) violation of his civil rights in retaliation for his exercise of First Amendment rights; (2) conspiracy to violate his constitutional right to speak on the public issue of the DISD bond election; (3) violation of his civil rights by interfering with his constitutional right to speak on the public issue of the DISD bond election; (4) violation of his civil rights by retaliating for his speech to the press; (5) violation of his right to petition the government for redress of his grievances; and (6) violation of his Fourteenth Amendment liberty and property rights.

David Venable's claims in this suit are similar to Finlan's claims and the claims that Hinds made in *Hinds v. Dallas Independent School District,* supra. In his latest petition, David Venable alleged that the DISD's filing of the 1992 tortious interference suit against him violated his civil rights under Section 1983. He also alleged claims for malicious prosecution, intentional infliction of emotional distress, and tortious interference with contractual and business relations.

The DISD, the DISD Defendants, and the Lawyer Defendants (the Defendants) filed motions for summary judgment on the merits of Finlan's and David Venable's claims; and the DISD Defendants and the Lawyer Defendants filed motions for summary judgment on immunity grounds. The Lawyer Defendants also filed a motion for summary judgment on Grant's cross-claim for indemnity against them. On July 26, 1999, the trial court entered an order granting summary judgment to the DISD and the DISD Defendants on the merits of Finlan's and David Venable's claims and to the DISD Defendants on their qualified immunity defense. On June 7, 2000, the trial court entered an order granting summary judgment to the Lawyer Defendants on the merits of Finlan's and David Venable's claims and on Grant's claim for indemnity. By separate order on June 7, 2000, the trial court severed Finlan's and David Venable's claims against Grant and Dan Peavy from this suit. On June 19, 2000, the trial court entered its final judgment in favor of the Defendants.

### Standard of Review

■ This appeal involves the review of traditional motions for summary judgment and no-evidence motions for summary judgment. We will apply the well-recognized standard of review for traditional summary judgments. We must consider the summary judgment evidence in the light most favorable to the non-movant, indulging all reasonable inferences in favor of the non-movant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Company, Inc.,* 690 S.W.2d 546 (Tex.1985); City of *Houston v. Clear Creek Basin Au-*

*thority,* 589 S.W.2d 671 (Tex.1979). In order for a defendant to be entitled to summary judgment, it must either disprove an element of each cause of action or establish an affirmative defense as a matter of law. *American Tobacco Company, Inc. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997); *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997).

 The trial court must grant a no-evidence motion for summary judgment unless the non-movant produces evidence that raises a genuine issue of material fact on the challenged element of his claim or defense. TEX.R.CIV.P. 166a(i). The appellate court reviews evidence presented in response to a motion for a no-evidence summary judgment in the same way it reviews evidence presented in support of, or in response to, a motion for traditional summary judgment; it accepts as true evidence favorable to the non-movant and indulges every reasonable inference and resolves all doubts in favor of the non-movant. *Hight v. Dublin Veterinary Clinic,* 22 S.W.3d 614, 619 (Tex.App.-Eastland 2000, pet'n den'd). A no-evidence summary judgment is improper if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Hight v. Dublin Veterinary Clinic,* supra at 619. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997), *cert. den'd,* 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998).

### *Finlan's and David Venable's Federal Civil Rights Claims*

In his first through fourth, seventh, and eighth issues, Finlan complains that the trial court erred in granting summary judgment and final judgment to the Defendants on the merits of his Section 1983 claims. In Issues Nos. 2 and 7, Finlan makes the specific complaint that the trial court erred in granting summary judgment on the ground that the filing of a retaliatory lawsuit is not actionable under Section 1983. In his third issue, David Venable complains that the trial court erred in granting summary judgment to the Defendants on the merits of his claims because the summary judgment evidence created a fact issue.

The first issue is whether the DISD's filing of the 1992 tortious interference suit violated Finlan's and David Venable's civil rights under Section 1983. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

 In order to recover under Section 1983, a plaintiff must establish that he has been deprived of a right, privilege, or immunity "secured by the Constitution and laws." See *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). If the Defendants conclusively established that they did not deprive Finlan and David Venable of any right, privilege, or immunity "secured by the Constitution and laws" by filing the 1992 tortious interference suit, the trial court properly granted summary judgment on the Section 1983 claims. The essence of Finlan's and David Venable's claims is that the Defendants filed a baseless and malicious suit against them in retaliation for Finlan' and Don

Venable's exercise of their First Amendment rights to free speech and, more specifically, of their rights to publicly criticize the DISD and oppose a bond election. Finlan asserts that the filing of the retaliatory suit violated his First Amendment rights of free speech and to petition the courts for redress of grievances.

In *Johnson v. Louisiana Department of Agriculture,* 18 F.3d 318, 320 (5th Cir. 1994), the Fifth Circuit determined that the filing of a suit in retaliation for the exercise of First Amendment free speech rights does not, in itself, constitute a violation of Section 1983. Johnson, a cropduster, claimed that the defendants had instituted a number of administrative actions against him for alleged violations of state pesticide laws in retaliation for his exercise of First Amendment free speech rights. The district court dismissed Johnson's claim for failure to state a Section 1983 claim, and the Fifth Circuit affirmed the district court. The Fifth Circuit analyzed the claim:

> If this allegation asserts a claim on any basis, we agree with the district court that the claim is one for malicious prosecution in violation of Johnson's First Amendment rights. Whether the Constitution comprehends any such claim is far from clear....Further, it is an even more complex question whether and on what basis a First Amendment claim of malicious prosecution can be made. But at the very least, if the First Amendment protects against malicious prosecution, Johnson must not only allege a deprivation of a constitutional right, but must also establish all of the elements of the common law tort action.

*Johnson v. Louisiana Department of Agriculture,* supra at 320.

In *Johnson,* the Fifth Circuit did not answer the question whether the filing of a suit in retaliation for the exercise of First Amendment rights could rise to the level of a constitutional violation that is actionable under Section 1983. However, the Fifth Circuit made clear that, if the Constitution recognizes such a claim, the plaintiff, at a minimum, would have to establish the deprivation of a constitutional right and all of the elements of a state law malicious prosecution claim. *Johnson v. Louisiana Department of Agriculture,* supra at 320; see also *Hinds v. Dallas Independent School District,* supra at 674.

In *Dallas Independent School District v. Finlan,* supra, the Dallas Court of Appeals relied upon *Johnson* and held that the DISD's filing of the allegedly retaliatory 1995 conspiracy suit against Finlan was not a constitutional violation. *Dallas Independent School District v. Finlan,* supra at 244. In *Hinds v. Dallas Independent School District,* supra, Hinds claimed that the DISD filed the 1995 conspiracy suit in retaliation for his exercise of First Amendment free speech rights and that the suit violated his First Amendment rights of free speech and to petition the courts. The federal district court analyzed the claims:

> In *Venable v. Keever,* 61 F.Supp.2d 552 (N.D.Tex.1999), this court held that the filing of an allegedly retaliatory counterclaim seeking declaratory judgment in state court on a matter already pending before that state court was not a violation of the First Amendment right of access to the courts....In a subsequent opinion, the court incorporated and reaffirmed its earlier holding and further held that the Plaintiffs failed to establish their civil conspiracy claim....Finlan, who was a named plaintiff in the action, appealed to the United States Court of Appeals for the Fifth Circuit. In an unpublished opinion, the Fifth Circuit dismissed the ap-

peal as frivolous. See *Venable v. Keever,* 263 F.3d 162 (5th Cir.2001).

The key issues or claims that Hinds raises in this action are strikingly similar, if not identical, to those raised and disposed of by this court and the Fifth Circuit in *Venable.* In *Venable,* the issue was an allegedly retaliatory counterclaim; in the present case, the issue is an allegedly retaliatory lawsuit. The court sees no meaningful distinction between a retaliatory counterclaim and a retaliatory lawsuit. If there is any distinction, it is infinitesimal and would have no impact on the court's analysis of Plaintiff's claims in this action. Accordingly, the holding in *Venable* and the authorities cited therein should foreclose the present action by Hinds.

*Hinds v. Dallas Independent School District,* supra at 672.

Nevertheless, the federal district court proceeded with its analysis of Hinds' claims; the court considered Hinds' claim that the DISD brought the 1995 suit in retaliation for his exercise of First Amendment free speech rights. The district court held that "Hinds's First Amendment retaliation claim is foreclosed because he has failed to allege a constitutional claim and establish each element of the underlying state tort claim—malicious prosecution." *Hinds v. Dallas Independent School District,* supra at 674; citing *Colson v. Grohman,* 174 F.3d 498, 513 n. 8 (5th Cir.1999), and *Johnson v. Louisiana Department of Agriculture,* supra at 320.

■ Finlan's and David Venable's retaliation claims are likewise foreclosed. Finlan and David Venable cannot establish a malicious prosecution claim. The elements of a malicious prosecution claim are: (1) the institution of or continuation of civil proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice in the commencement of the pro-

ceeding; (4) lack of probable cause for the proceeding; (5) termination of the proceeding in plaintiff's favor; and (6) special damages. *Texas Beef Cattle Company v. Green,* 921 S.W.2d 203, 207 (Tex.1996); citing *James v. Brown,* 637 S.W.2d 914, 918 (Tex.1982). The mere filing of a civil lawsuit is insufficient to establish the special injury requirement. *Texas Beef Cattle Company v. Green,* supra at 208–09. In order to satisfy the special injury requirement, in addition to the filing of the suit, "[t]here must be some physical interference with a party's person or property in the form of an arrest, attachment, injunction, or sequestration." *Texas Beef Cattle Company v. Green,* supra at 209. In this case, there was no arrest, attachment, injunction, or sequestration; the Defendants did not interfere with the person or property of either Finlan or David Venable.

■ Rather, Finlan claims that he suffered damage to his reputation, pecuniary losses, adverse tax losses, personal injuries, a loss of ability to obtain credit, and a loss of property interests, including the rights to speak and vote. David Venable claims that he suffered damage to his reputation and economic losses that forced him to close his Dallas office. The types of "reputation" damages and "business loss" damages claimed by Finlan and David Venable do not satisfy the "special injury" requirement for malicious prosecution claims. *Ross v. Arkwright Mutual Insurance Company,* 892 S.W.2d 119, 128 (Tex.App.-Houston [14th Dist.] 1994, no writ); *Martin v. Trevino,* 578 S.W.2d 763, 766–70 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n.r.e.). The Defendants conclusively established that Finlan and David Venable did not suffer a special injury. The trial court properly granted summary judgment to the Defendants on Finlan's and David Venable's Section 1983 retaliation claims.

Further, DISD's filing of the suit did not violate Finlan's right to petition. A person's "access to the courts is protected by the First Amendment right to petition for redress of grievances." *Dallas Independent School District v. Finlan*, supra at 244; citing *Ryland v. Shapiro*, 708 F.2d 967, 971–72 (5th Cir.1983), and *Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir.1979). The right of access to the courts is implicated "where the ability to file suit was delayed, or blocked altogether." *Dallas Independent School District v. Finlan*, supra at 244; citing *Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir.1994). In *Dallas Independent School District v. Finlan*, supra, the Dallas Court of Appeals addressed Finlan's right to petition claim:

> Finlan has not alleged, much less established, his ability to file suit was in any way blocked altogether. Rather, he has been a frequent party to litigation against DISD Trustees. See, e.g., *Keever v. Finlan*, 988 S.W.2d 300 (Tex.App.-Dallas 1999, pet. dism'd); *Venable v. Keever*, 960 F.Supp. 110 (N.D.Tex.1997). The government's filing of a civil lawsuit against an individual in no way stands as an "official impediment" to that individual's "facilitative right to institute a suit." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir.1995). Thus, we hold that Finlan's constitutional right to access to the courts was not violated under our facts.

*Dallas Independent School District v. Finlan*, supra at 244. In *Hinds*, the federal district court held that because "Hinds has failed to allege that his ability to file suit was delayed, or blocked altogether, or *allege facts which would establish such*, he has not alleged the violation of an actual constitutional right at all." (Emphasis in original) *Hinds v. Dallas Independent School District*, supra at 673. The DISD's filing of the 1992 tortious interference suit did not delay or block Finlan's ability to

file suit. The trial court properly granted summary judgment to the Defendants on Finlan's right to petition claim.

Finlan's eighth issue complains that the trial court erred in granting summary judgment to the Lawyer Defendants on his Fourteenth Amendment substantive due process claim. Finlan added this claim after the trial court granted summary judgment to the DISD and the DISD Defendants. Finlan asserts that he added his Fourteenth Amendment claim after discovering new evidence that "the defendants' $270 million suit against Finlan was intentionally and maliciously sham litigation." The Lawyer Defendants addressed this claim in their second supplemental motion for summary judgment. Finlan's First Amendment and Fourteenth Amendment claims are both based upon the DISD's filing of the 1992 tortious interference suit against him.

Finlan's Fourteenth Amendment claim does not permit him to avoid summary judgment on his Section 1983 claims. The First Amendment applies to the states through the Fourteenth Amendment; the First Amendment's protected right to free speech is a protected "liberty" right under the Fourteenth Amendment. See *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 337 n. 1, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). Finlan based his Fourteenth Amendment "substantive due process" claim upon the alleged deprivation of his First Amendment rights. Finlan's First and Fourteenth Amendment claims are based upon the same facts. Finlan's failure to establish a constitutional deprivation of his First Amendment rights precludes a Fourteenth Amendment substantive due process claim based upon the same facts. See *Colson v. Grohman*, supra; *Fowler v. Smith*, 68 F.3d 124, 127 (5th Cir.1995). The trial court properly

granted summary judgment on Finlan's Fourteenth Amendment claim.

Finlan also alleged that the Defendants conspired to violate his civil rights. A conspiracy claim is not actionable under Section 1983 if there is no actual constitutional or statutory violation. *Kerr v. Lyford,* 171 F.3d 330, 340–41 (5th Cir.1999); *Hale v. Townley,* 45 F.3d 914, 920 (5th Cir.1995); *Cinel v. Connick,* 15 F.3d 1338, 1343 (5th Cir.1994). Because the Defendants established that no underlying constitutional violation occurred, Finlan cannot recover on his conspiracy theory. The trial court properly granted summary judgment to the Defendants on Finlan's conspiracy claim.

Because the Defendants established that they were entitled to summary judgment on the merits of each theory alleged by Finlan, we overrule Finlan's first, second, third, fourth, seventh, and eighth issues.

David Venable claims that the Defendants did not address his "right of association" claim in their motions for summary judgment. The "right of association" is another First Amendment right; it encompasses a "right of intimate association" and a "right of expressive association." See *McCabe v. Sharrett,* 12 F.3d 1558, 1562–63 (11th Cir.1994). The "right of intimate association" has been described as "the freedom to choose to enter into and maintain certain intimate human relationships." *McCabe v. Sharrett,* supra at 1563; citing *Roberts v. United States Jaycees,* 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). "At a minimum, the right of intimate association encompasses the personal relationships that attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *McCabe v. Sharrett,* supra at 1563; citing *Roberts v. United States Jaycees,* supra. This right "is protected from undue governmental intrusion as a fundamental aspect of personal liberty." *McCabe v. Sharrett,* supra at 1563; citing *Roberts v. United States Jaycees,* supra.

The Defendants filed no-evidence motions for summary judgment attacking David Venable's Section 1983 claims; the Defendants asserted that there was no evidence that David Venable had suffered a constitutional deprivation. The Defendants' motions were sufficient to attack a "right of association" claim. We need not determine whether the "right to intimate association" encompasses the relationship of adult brothers, such as the Venables, because David Venable did not produce any evidence in support of his claim that the Defendants violated his "right of association." There is no evidence of "undue governmental intrusion" on his alleged "right of association" with his brother. David Venable failed to meet his summary judgment burden. We overrule David Venable's second issue.

### DISD Defendants' Qualified Immunity Defense

In Finlan's third issue and David Venable's fourth issue, they complain that the trial court erred in granting summary judgment to the DISD Defendants on the basis of qualified immunity. The defense of qualified immunity shields governmental officials from liability under Section 1983 for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dallas Independent School District v. Finlan,* supra at 242; citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

In *Dallas Independent School District v. Finlan,* supra, the Dallas Court of Appeals determined the precise issue

involved in this case. The Dallas Court of Appeals held that qualified immunity shielded individual DISD trustees from liability for Finlan's Section 1983 civil rights claims based upon the DISD's filing of the 1995 conspiracy suit. *Dallas Independent School District v. Finlan,* supra at 244. In order for the qualified immunity defense to apply, the public official must show that he was "acting in his official capacity and within the scope of his discretionary authority." *Dallas Independent School District v. Finlan,* supra at 242; citing *Barker v. Norman,* 651 F.2d 1107, 1121 (5th Cir.1981). "Discretionary authority exists when the law does not specify the precise action that the official must take." *Dallas Independent School District v. Finlan,* supra at 242; citing *Davis v. Scherer,* 468 U.S. 183, 196 n. 14, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). "An act is discretionary under Texas law if it requires personal deliberation, decision, and judgment." *Dallas Independent School District v. Finlan,* supra at 242; citing *Jolly v. Klein,* 923 F.Supp. 931, 948 (S.D.Tex.1996).

The question whether to file suit requires deliberation, decision, and judgment. The Dallas Court of Appeals determined that the DISD officials' decision to allow the filing of the 1995 conspiracy suit against Finlan was "a wholly discretionary act taken within their official authority." *Dallas Independent School District v. Finlan,* supra at 242. Likewise, the DISD Defendants' decision to allow the filing of the 1992 tortious interference suit against Finlan and the Venables was a discretionary act taken within their official authority.

In *Dallas Independent School District v. Finlan,* supra, the Dallas Court of Appeals explained the sequential two-step inquiry that courts must use to decide motions for summary judgment that raise the qualified immunity defense. *Dallas Independent School District v. Finlan,* supra at 243; citing *Siegert v. Gilley,* 500 U.S. 226, 231–32, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). First, the courts decide the "purely legal question" of whether the defendant's conduct violated clearly established law at the time the conduct occurred. *Dallas Independent School District v. Finlan,* supra at 243; citing *Siegert v. Gilley,* supra. This question is always a matter of law for the court and may always be decided at the summary judgment stage. *Dallas Independent School District v. Finlan,* supra at 243; citing *Pritchett v. Alford,* 973 F.2d 307, 313 (4th Cir. 1992). If the conduct complained of did not violate clearly established law, "summary judgment is proper without an inquiry into reasonableness because an official could not reasonably be expected to know that the law forbade his conduct." *Dallas Independent School District v. Finlan,* supra at 243; citing *Harlow v. Fitzgerald,* supra. If the conduct complained of did violate clearly established law, the court must then determine whether the defendant's conduct was objectively reasonable. *Dallas Independent School District v. Finlan,* supra at 243; citing *Pritchett v. Alford,* supra. This inquiry "may or may not be ... subject to determination as a matter of law." *Dallas Independent School District v. Finlan,* supra at 243.

The Dallas Court of Appeals then explained the first inquiry in the qualified immunity analysis:

> Turning to the threshold inquiry regarding the qualified immunity defense, the legal right at issue in this case is Finlan's right not to be subjected to a civil suit for allegedly exercising his free speech rights and for invoking his right to access the courts. Thus, the legal question is whether the law was clearly established in 1995 that the filing of a civil suit, alleged to be malicious and

retaliatory, would violate an individual's First Amendment rights to free speech and access to the courts.

*Dallas Independent School District v. Finlan,* supra at 243–44.

The Dallas Court of Appeals considered Finlan's free speech claim. The court relied upon the Fifth Circuit's holding in *Johnson* that "there is no clearly established right to claim a First Amendment violation from the filing of a civil lawsuit, even one alleged to be malicious prosecution, in retaliation for the exercise of free speech rights." *Dallas Independent School District v. Finlan,* supra at 244. Therefore, the Dallas Court of Appeals held that "in 1995 there was no clearly established law that the filing of a civil suit in retaliation violated an individual's free speech rights." *Dallas Independent School District v. Finlan,* supra at 244. The Dallas Court of Appeals then considered Finlan's right to petition claim and noted the Fifth Circuit's recognition that "it is well established that access to the courts is protected by the First Amendment right to petition for redress of grievances." *Dallas Independent School District v. Finlan,* supra at 244; citing *Ryland v. Shapiro,* supra at 971–72, and *Wilson v. Thompson,* supra at 1387. However, because Finlan failed to allege or establish that his ability to file suit was in any way delayed or blocked altogether, the Dallas Court of Appeals held "that Finlan's constitutional right to access to the courts was not violated under our facts." *Dallas Independent School District v. Finlan,* supra at 244. Consequently, the Dallas Court of Appeals held that the trial court properly granted summary judgment to the DISD Trustees on their qualified immunity defense. *Dallas Independent School District v. Finlan,* supra at 244.

The first inquiry in the qualified immunity analysis in this case is essentially the same as the first inquiry in *Dallas Independent School District v. Finlan,* supra. In this case, the inquiry is whether the law was clearly established in 1992 that the filing of a civil suit, alleged to be malicious and retaliatory, would violate an individual's First Amendment rights to free speech and access to the courts. In 1992, just as in 1995, there was no clearly established law that the filing of a retaliatory and malicious civil suit violated an individual's free speech rights. See *Dallas Independent School District v. Finlan,* supra at 244. As discussed above, the DISD's filing of the 1992 tortious interference suit did not violate Finlan's constitutional right to access the courts. The trial court properly granted summary judgment to the DISD Defendants on Finlan's and David Venable's civil rights claims based upon their qualified immunity defense. We overrule Finlan's third issue and David Venable's fourth issue.

### The "Law of the Case" Doctrine Does Not Apply

In his first issue, David Venable asserts that the trial court erred in refusing to follow the "law of the case" on the qualified immunity issue. We disagree. Before Finlan's and David Venable's claims against the DISD Defendants and the Lawyer Defendants were consolidated into this cause, the DISD Defendants moved for summary judgment on their qualified immunity defense in the 162nd District Court. The trial court denied the motion; and, as allowed by TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(5) (Vernon Supp.2002), the DISD Defendants filed an interlocutory appeal of the denial of the motion. In an unpublished opinion, the Dallas Court of Appeals affirmed the trial court (see *Kress v. Venable,* No. 05–96–00663–CV, 1997 WL 211556 (Tex.App.-Dallas, April 30, 1997, writ dism'd

w.o.j.)(not designated for publication)). David Venable claims that the trial court erred in granting summary judgment to the DISD Defendants on the immunity issue because the summary judgment was contrary to the "law of the case."

The "law of the case" doctrine provides that questions of law decided on appeal to a court of last resort govern that case throughout its subsequent stages. *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986). The "law of the case" doctrine only applies to questions of law; it does not apply to questions of fact. *Hudson v. Wakefield,* supra at 630. In *Kress v. Venable,* supra, the Dallas Court of Appeals did not decide a question of law. It did not address the first inquiry in the qualified immunity analysis; that is, it did not address the question of law whether the law was clearly established in 1992 that the filing of a civil suit, alleged to be malicious and retaliatory, would violate an individual's First Amendment rights to free speech and access to the courts. Rather, the Dallas Court of Appeals held that the DISD Defendants' summary judgment evidence failed to conclusively establish that they were entitled to summary judgment on the immunity issue. See *Kress v. Venable,* supra. The summary judgment affidavits offered by the DISD Defendants in *Kress v. Venable,* supra, did not negate the existence of fact issues; the affidavits were factually insufficient to support a summary judgment. The Dallas Court of Appeals based its holding on the insufficient summary judgment evidence, not on a decision on a question of law. The "law of the case" doctrine does not apply. We overrule David Venable's first issue.

### Finlan's Motion for Partial Summary Judgment

In his fifth issue, Finlan complains that the trial court erred by failing to grant his May 20, 1999, motion for partial summary judgment against the DISD and the DISD Defendants on his Section 1983 claims. Because the trial court properly granted summary judgment to the DISD and the DISD Defendants on Finlan's claims, it was proper for the trial court to deny Finlan's motion for partial summary judgment on the same claims. We overrule Finlan's fifth issue.

### David Venable's State Law Claims

In his First Amended Original Petition, David Venable also alleged claims of (1) malicious prosecution, (2) intentional infliction of emotional distress, and (3) tortious interference with business and contractual relations. The elements of a malicious prosecution claim are set forth above. The Defendants established as a matter of law that David Venable did not sustain a "special injury." Therefore, the trial court properly granted summary judgment on the malicious prosecution claim.

In order to establish an intentional infliction of emotional distress claim, a plaintiff must establish four elements: (1) the defendant acted intentionally or recklessly; (2) the conduct was "extreme and outrageous"; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993). "Extreme and outrageous conduct" means conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman,* supra at 621. The Defendants met their summary judgment burden of establishing that their conduct was not extreme and outrageous. Sum-

mary judgment was proper on David Venable's intentional infliction of emotional distress claim.

In order to establish a tortious interference with contract claim, a plaintiff must establish: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss. *Texas Beef Cattle Company v. Green*, supra at 210. Texas law also recognizes a cause of action for tortious interference with prospective relationships. The elements of this claim are: (1) a "reasonable probability" that the plaintiff would have entered into a contractual relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's conduct. See *Ash v. Hack Branch Distributing Company, Inc.*, 54 S.W.3d 401, 414–15 (Tex.App.-Waco 2001, pet'n den'd).

The Defendants filed no-evidence motions for summary judgment on David Venable's tortious interference claims. David Venable failed to produce summary judgment evidence that the Defendants interfered with or damaged any specific contract, prospective contract, or relationship. Without evidence of any such contracts or relationships, the trial court properly granted summary judgment on David Venable's tortious interference claims. See *Stephan v. Baylor Medical Center at Garland*, 20 S.W.3d 880, 891 (Tex.App.-Dallas 2000, no pet'n). Because the Defendants established that they were entitled to summary judgment on each theory alleged by

David Venable, we overrule David Venable's third issue.

### *Continuance of Summary Judgment Proceedings*

In his fifth issue, David Venable complains that the trial court erred by failing to continue the summary judgment hearings to allow him additional time for discovery. We review the trial court's denial of a motion for continuance of a summary judgment hearing under an abuse of discretion standard. *Tenneco, Inc. v. Enterprise Products Company*, 925 S.W.2d 640, 647 (Tex.1996); *Villegas v. Carter*, 711 S.W.2d 624 (Tex.1986). A trial court abuses its discretion in this context only if the record clearly demonstrates that the denial was arbitrary and unreasonable. *Gregg v. Cecil*, 844 S.W.2d 851, 853 (Tex.App.-Beaumont 1992, no writ). It is generally not an abuse of discretion by the trial court to deny a motion for continuance of a summary judgment hearing if the party has received the 21 day notice of the hearing required by TEX.R.CIV.P. 166a(c). *Dallas Independent School District v. Finlan*, supra at 235–36. David Venable received more than the 21 day notice required by the rule. David Venable contends that he needed to obtain additional documents from the DISD and to take the depositions of the Lawyer Defendants, but he failed to identify how the additional discovery would have permitted him to adequately respond to the Defendants' motions for summary judgment. Moreover, David Venable had years to request discovery. The record does not show that David Venable used diligence in seeking the discovery. If he did, in fact, seek the discovery and the Defendants failed to respond as they were required to do under the Texas Rules of Civil Procedure, David Venable had the opportunity to seek relief from the trial court. The record does not demon-

strate that he made any such attempts. The record does not establish that the trial court abused its discretion in denying a continuance of the summary judgment hearings. We overrule David Venable's fifth issue.

### Finlan's Other Issues

In his sixth issue, Finlan asserts that the trial court erred "by granting DISD judgment on Finlan's declaratory judgment claim, abuse of process claim, malicious prosecution claim, and Texas Open Records claim because such causes of action were not before the court." Finlan asserted these claims in his original petition but dropped these claims before the DISD filed its motion for summary judgment. The DISD did not move for summary judgment on these claims; the trial court did not grant summary judgment on these claims. We overrule Finlan's sixth issue.

In his ninth issue, Finlan asserts that the Lawyer Defendants' motion for summary judgment and supplemental motions for summary judgment did not address his live pleadings. Finlan is incorrect in this assertion. The record shows that the Lawyer Defendants did address his live pleading in their second supplemental motion for summary judgment. We overrule Finlan's ninth issue.

### Grant's Claims Against the Lawyer Defendants

■■■■ In his first issue, Grant complains that the trial court erred by failing to sever and abate his legal malpractice claim for indemnity against the Lawyer Defendants pending the outcome of the principal cause of action. However, Grant did not request the trial court to sever or abate his claim. Grant cannot raise this issue for the first time on appeal. See TEX.R.APP.P. 33.1(a). Moreover, sever-

ance and abatement of claims are matters within the sound discretion of the trial court, and the appellate courts review a trial court's rulings on the issues under an abuse of discretion standard. *Liberty National Fire Insurance Company v. Akin*, 927 S.W.2d 627, 629 (Tex.1996). In *Guaranty Federal Savings Bank v. Horseshoe Operating Company*, 793 S.W.2d 652, 658 (Tex.1990), the supreme court stated that a trial court properly severs claims when: (1) the controversy involves more than one cause of action; (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted; and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. Thus, if the claims are so interwoven that they involve the same facts and issues, such as in the case now before this court, severance is not proper. Grant's indemnity claim against the Lawyer Defendants is predicated upon the DISD's filing of the 1992 tortious interference suit against Finlan and the Venables. Grant's claim and Finlan's and the Venables' claims involve many of the same facts and issues. Grant's claims are "interwoven" with Finlan's and the Venables' claims. Under these circumstances, even if Grant had moved the trial court to sever and abate his claims, the trial court would not have abused its discretion if it denied the motion. We overrule Grant's first issue.

■■■■ In his second issue, Grant claims that the summary judgment evidence raised fact issues precluding summary judgment on his indemnity claim against the Lawyer Defendants. The trial court's summary judgment in favor of the Lawyer Defendants on Finlan's and David Venable's claims was proper. Because Finlan and David Venable have no cause of action against the Lawyer Defendants, Grant cannot recover indemnity from the

Lawyer Defendants. Indemnity cannot be recovered from a party when the injured party has no cause of action against the party from whom indemnity is sought. *Hunter v. Fort Worth Capital Corporation*, 620 S.W.2d 547, 553 (Tex.1981); *Medical Protective Company v. Groce Locke & Hebdon*, 814 S.W.2d 124, 130 (Tex.App.-Corpus Christi 1991, writ den'd). The trial court properly granted summary judgment to the Lawyer Defendants on Grant's indemnity claim. We overrule Grant's second issue.

In his third issue, Grant claims that the trial court erred in denying his motion to continue the summary judgment proceedings. Grant raises the same arguments that David Venable argued in his fifth issue. We overruled David Venable's fifth issue above. We overrule Grant's third issue for the same reasons.

### Grant's Issues as Cross–Plaintiff

In his mandamus action, Grant sought an order from the trial court requiring the DISD to provide him with a defense of Finlan's and the Venables' claims. In his first issue, Grant asserts that the trial court erred by rendering a final judgment in this action because the trial court did not rule on his mandamus action. Alternatively, Grant asserts that the trial court abused its discretion if it granted judgment to the DISD on his mandamus action. Grant sought the mandamus relief in his capacity as a defendant of Finlan's and the Venables' claims. The trial court severed Finlan's and the Venables' claims against Grant from this action. Grant's mandamus action seeking a defense of these very claims went with the severed action. Grant can pursue his claim in the severed action. We overrule Grant's three issues as cross-plaintiff.

### Lawyer Defendants' Cross–Point

Because we have held that the summary judgment in favor of the Lawyer Defendants on the merits of Finlan's and David Venable's claims was proper, we need not address the Lawyer Defendants' cross-point that the trial court erred by denying them summary judgment on their qualified immunity defense and other immunity defenses.

### This Court's Ruling

We affirm the judgment of the trial court.