**Opinion filed March 31, 2011**



## In The

# Eleventh Court of Appeals

_____

### No. 11-10-00170-CV

_____

## TSBA, INC. D/B/A THE SURETY BONDING COMPANY, Appellant

## V.

## PERKINS INSURANCE AGENCIES, LLP, LEROY PERKINS, MARK PERKINS, AND SBMP, INC., Appellees

**On Appeal from the County Court at Law**
**Taylor County, Texas**
**Trial Court Cause No. 21,509**

### M E M O R A N D U M   O P I N I O N

TSBA, Inc. d/b/a The Surety Bonding Company filed suit against Ron Caspell, Perkins Insurance Agencies, LLP, Leroy Perkins, Mark Perkins, and SBMP, Inc.[1] TSBA alleged various causes of action arising from an employment agreement Caspell signed while working for TSBA. The defendants, excluding Caspell, filed a no-evidence motion for summary judgment.[2] The trial court granted the defendants' motion, entered a take-nothing judgment, and severed TSBA's claims against them. We affirm.

---

[1]We note that throughout the record the trial court is referred to as County Court at Law No. 1. Pursuant to TEX. GOV'T CODE ANN. § 25.2231 (Vernon 2004), we will refer to the trial court as County Court at Law.

[2]Unless otherwise stated, we will refer to the moving parties collectively as the defendants.

## I. *Background Facts*

In August 2001, Jeannie Hamilton and Caspell entered into a partnership and started The Surety Bonding Agency. They incorporated their business in 2002. In August 2004, Hamilton purchased substantially all of TSBA's stock. TSBA then entered into a written employment agreement with Caspell that was referred to as a Producer's Agreement. The agreement was for a term of four years. In relevant part, it provided:

> **Covenants of Confidentiality and Non-Piracy:** The parties hereto agree as follows:
> 1. All information, papers, contracts, methods of doing business and other client-sensitive matters are deemed to be proprietary information and materials which shall at all times remain the property of TSBA. Caspell agrees not to reveal any such information to any person or entity prior to or during the term of this Agreement, or after the termination of this Agreement for any reason.
>
> 2. During the term of this Agreement, Caspell agrees not to engage, directly or indirectly, in any business activity that would, in any way or manner, be in competition with the business of TSBA, without the written consent of TSBA first obtained.
>
> 3. During the term of this Agreement and for a period of two (2) years following termination hereof, Caspell agrees not to compete with TSBA by utilizing any trade secrets, methods of operation, business strategies or proprietary information gained as a result of his affiliation with TSBA.
>
> 4. The parties agree that any breach or threatened breach of any of the covenants contained herein would cause immediate, material and irreparable harm to TSBA. TSBA shall have all of the rights and remedies available under law including, but not limited to, injunctive relief and monetary damages ordered by a judgment or decree of a court of competent jurisdiction.

Caspell resigned from TSBA on July 22, 2008. He then spoke with the Perkins Agencies about working for them. In August, Hamilton notified Leroy Perkins that Caspell had a noncompete agreement with TSBA. They also discussed Bulldog Constructors, Inc., and Hamilton informed him that Bulldog was a TSBA client. No other clients were discussed.

TSBA continued to do business with Bulldog. In January 2009, Hamilton received a call from Bulldog concerning a rebid for the City of Clyde stadium project. Hamilton had not previously heard of this project. She investigated and discovered that Bulldog originally contacted Caspell to obtain a bid bond. She also discovered that the defendants had sent Bulldog financial records to United Fire Group to obtain underwriting authority. TSBA then filed this suit.

## II. *Issues*

TSBA challenges the trial court's order granting the defendants' no-evidence motion for summary judgment with fourteen issues, contending primarily that there are unresolved fact issues on each of its causes of action. Issues One through Four concern TSBA's allegation that the defendants have improperly used TSBA's trade secrets. Issue Five alleges that Caspell's contract with TSBA is enforceable, and Issue Thirteen alleges that there is an existing contract between TSBA and Caspell. Issues Six through Ten concern TSBA's tortious interference claims. In Issue Eleven, TSBA alleges that it produced evidence of damage. TSBA contends in Issue Twelve that summary judgment on its joint venture claim was inappropriate. Finally, in Issue Fourteen, TSBA alleges that there is a fact question on its conspiracy claim.

## III. *Standard of Review*

No-evidence motions for summary judgment are reviewed under the same standard as a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). Accordingly, we review the evidence in the light most favorable to the nonmovant and disregard all contrary evidence and inferences. *Id.* A trial court must grant a proper no-evidence motion for summary judgment unless the nonmovant produces more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element of the claim. TEX. R. CIV. P. 166a(i).

## IV. *Misappropriation of Trade Secrets or Other Confidential Information*

The defendants note that the Producer's Agreement contains no geographic restriction and that they are not parties to it. TSBA concedes that the noncompete portion of the agreement is unenforceable. But, it argues that the remainder of the agreement, including the covenants to protect trade secrets and other confidential information, is enforceable and that the defendants are liable for Caspell's actions in violation of that agreement because they misappropriated protected information. The defendants argue that there was no evidence that they used or appropriated any document, proprietary information, or other client-sensitive information.

TSBA's brief contains a comprehensive discussion of Caspell's attempts to do business with TSBA customers. TSBA acknowledges that there was no evidence that Caspell used a TSBA customer list, but it contends that he knew the customers because of his work with TSBA. Because the noncompete portion of the Producer's Agreement is unenforceable, the mere fact that Caspell spoke to former customers is no evidence that the defendants misappropriated any trade secrets or other confidential information.

3

TSBA also claims that the defendants improperly used information from Bulldog. TSBA provided evidence that Caspell forwarded Bulldog financial statements to the United Fire Group in connection with a bid bond request. At oral argument, TSBA contended that this was proprietary information because Caspell acquired it from Bulldog while he was working for TSBA. Bulldog's financial data belongs to Bulldog. If it wished to provide Caspell or the defendants with a copy of its financial statements, that was Bulldog's prerogative. The mere fact that TSBA also had copies of these statements in its files does not mean that they were TSBA's confidential information. The question is: Where did the statements that Caspell forwarded come from? Because the defendants argued that there was no evidence they misappropriated any protected information, it was incumbent upon TSBA to produce evidence that these statements came from its files and not from the client. Because it did not do so, the trial court did not err by granting summary judgment on TSBA's claim for misappropriation of trade secrets and other confidential information. Issues One through Four are overruled.

V. *Interference with Contract*

TSBA next argues that its Producer's Agreement is enforceable and that the defendants interfered with it. To establish tortious interference with an existing contract, TSBA must show (1) the existence of a contract subject to interference, (2) a willful and intentional act of interference, (3) that was a proximate cause of the plaintiff's damages, and (4) actual damage or loss. *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996). Ordinarily, merely inducing a contract obligor to do what it has a right to do under the contract is not actionable interference. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

If we assume that the Producer's Agreement, sans its noncompete provision, is enforceable, then TSBA was required to produce evidence of willful and intentional interference *with that contract by the defendants*. In support of this claim, TSBA contends: "No one twisted the Appellees' arms to keep these astute business men and organizations from making an inquiry about the terms of the agreement and the customers of the Appellate [sic]. Mr. Perkins had the audacity to write a letter inquiring who the Appellant's and Mr. Caspell's customers were."

The audacious letter to which TSBA refers was a letter from Leroy Perkins to Hamilton written on June 10, 2009, almost a year after Caspell left TSBA. In that letter, Leroy Perkins wrote:

> To avoid any conflict between The Surety Bonding Agency and Ron Caspell, could you please provide a list of Accounts that Ron worked on while he

was with your Agency? We want to monitor this situation and avoid any disagreement and/or injury to either of you during the remaining time that the Non-Compete Agreement is in effect.

Hamilton responded on June 16:

As I recall, you and I had two or three conversations regarding Ron's Non Compete, Non Piracy and Confidentiality Agreement prior to Ron becoming your agent. Bulldog Constructors was specifically discussed and yet Ron issued two (2) bonds this year for this account.

Ron, having been a prior partner to TSBA, Inc., is very well aware of the business clients of this office. It is my opinion and Nelson Quinn's opinion that any information you want about our accounts, you should obtain from Ron Caspell.

This letter simply does not establish any improper action by the defendants. Indeed, by refusing to answer Perkins's question but, instead, directing him to get this information from Caspell, Hamilton invited the type of action for which she now complains.

TSBA failed to produce any evidence that the defendants took any willful and intentional action to interfere with the Producer's Agreement. The trial court, therefore, did not err by granting the defendants' motion for summary judgment on TSBA's tortious interference with contract claim. Issues Five, Six, Seven, and Thirteen are overruled.

VI. *Interference with Business Relations*

To establish a cause of action for interference with business relations, TSBA was required to offer evidence that (1) there was a reasonable probability that it would have entered into a contractual relationship, (2) an independently tortious or unlawful act by the defendants prevented the relationship from occurring, (3) the act was done with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially certain to occur as a result of their conduct, and (4) TSBA suffered actual harm or damage as a result of the interference. *See Finlan v. Dallas Indep. Sch. Dist.*, 90 S.W.3d 395, 412 (Tex. App.—Eastland 2002, pet. denied). TSBA's brief does not address any of these elements nor did its summary judgment proof identify any prospective business relationship – its evidence related solely to existing TSBA clients. If TSBA's contention is that it would have done more business with these customers, it failed to offer any evidence of an independent tortious or unlawful act by the defendants that prevented it from doing so. The trial court did

5

not, therefore, err by granting summary judgment on TSBA's interference with business relations claim.

TSBA's brief does, however, discuss its causes of action for unjust enrichment. TSBA acknowledges that, to prevail on a cause of action for unjust enrichment, it must produce evidence that the defendants obtained money from TSBA by fraud, duress, or taking an undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). TSBA's brief does not direct us to any evidence of fraud, duress, or taking an undue advantage by the defendants, and we saw none in our review of the record. Issues Eight, Nine, Ten, and Eleven are overruled.

## VII. *Joint Venture*

TSBA next argues that the defendants and Caspell were involved in a joint venture or enterprise. That, alone, does not establish a cause of action. To the extent TSBA included this claim to hold the defendants responsible for Caspell's actions, we have considered that evidence as set forth above. Issue Twelve is overruled.

## VIII. *Conspiracy*

TSBA's final claim is that an actionable conspiracy existed between Caspell and the defendants. TSBA contends that the defendants could conspire "by stealing or misappropriating trade secrets, tortious interference with contracts, and/or business relations." Because TSBA failed to offer any evidence that the defendants did so, the trial court did not err by granting summary judgment on TSBA's conspiracy claim. Issue Fourteen is overruled.

## IX. *Conclusion*

The judgment of the trial court is affirmed.

RICK STRANGE

JUSTICE

March 31, 2011

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

6